## MILLS v. GRAY.

No. 2966.   Decided August 20, 1917.   (167 Pac. 358.)

1. ACTION—NATURE AND FORM—EQUITABLE RELIEF. A party is not entitled to have an action dismissed merely because the relief his adversary is entitled to may be equitable rather than legal.[1] (Page 231.)

2. PARTNERSHIP—ACTION AT LAW BETWEEN PARTNERS. Where there are no partnership liabilities, and there is nothing requiring an accounting between the partners, one can maintain an action against the other to recover his alleged share of the proceeds of the partnership business. (Page 231.)

3. APPEAL AND ERROR—QUESTIONS NOT RAISED BELOW—DEFENSES. If there was any reason why plaintiff should not have prevailed in his action at law to recover his share of the proceeds of the partnership business, it was the duty of defendant to plead it as a defense to the

---

[1]*Morgan* v. *Child, Cole & Co.*, 41 Utah, 562, 128 Pac. 521.

action, and, not having done so, he cannot complain on appeal. (Page 231.)

4. CONTRACTS—ILLEGALITY—RELIEF OF PARTIES. Where plaintiff, the employee of a mining company, and defendant agreed to mine ore under a lease made with the mining company in defendant's name, plaintiff to pay defendant two-thirds of the expenses, and defendant to pay one-third, the net proceeds derived from the ores to be divided between them in the same proportion, though it was a rule of the mining company that its employees might not be interested in any leases covering any of the company's workings, and though plaintiff knew of such rule, he was not thereby debarred from recovering of defendant his two-thirds share of the proceeds of a shipment of ores. (Page 234.)

5. ACTION—PURPOSE OF INSTITUTION—ENFORCEMENT OF LEGAL RIGHTS. Courts are instituted to enforce legal rights, as contradistinguished from moral obligations, and where the legal right is in one against whom the moral obligation is asserted, the legal right prevails. (Page 234.)

6. TRIAL—IMMATERIAL FINDING. A finding on a question of fact which could not avail defendant as a defense was immaterial. (Page 235.)

7. TRIAL—FAILURE TO FIND ON IMMATERIAL MATTER. Failure to find on an immaterial matter is not an error. (Page 235.)

8. MINES AND MINERALS—MINING PARTNERSHIP—ACTIONS. In one partner's action against another to recover his share in the proceeds of a shipment of ores belonging to the partnership, court's findings of fact *held* sufficient to sustain its judgment for plaintiff. (Page 235.)

9. APPEAL AND ERROR—HARMLESS ERROR—FINDINGS OF FACT. In such action, the mere fact that the findings were expanded beyond the issues was not prejudicial to defendant. (Page 235.)

10. APPEAL AND ERROR—REVERSAL—HARMLESS ERROR. If defendant is not prejudiced in a substantial right, judgment for plaintiff cannot be reversed for mere technical errors. (Page 235.)

Appeal from District Court, Fifth District; *Hon. Joshua Greenwood,* Judge.

Action by David Mills against Abner Gray.

Judgment for plaintiff. Defendant appeals.

AFFIRMED.

*M. E. Wilson* and *J. C. Wood* for appellant.

*Edward Pike* and *N. W. Sonnedecker* for respondent.

APPELLANT'S POINTS.

In the case of *Riddle* v. *Ramsey,* 31 Mont. 386; 78 Pac. 597, the court said:

"The individual interest of one partner in the firm assets can only be ascertained by a settlement of the partnership affairs. * * * Such settlement can only be accomplished by an agreement of the partners or by an action in equity for an accounting and settling of their various interests." Sutherland on Pleadings and Practice of Forms, Sec. 3712; *Murray* v. *Bogert,* 14 Johns 318; 7 Am. Dec. 466; *Blakely* v. *Smock,* 71 N. W. 1052; 96 Wis. 611.

In the case of *Ozeas* v. *Johnson,* 4 Dallas. 434; 1 L. Ed. 897, the Supreme Court of the United States said:

"Money received by one partner during the partnership is not received for the use of either but for the use of both the partners. All that either partner is entitled to is moiety of what remains after all the partnership debts are paid, and the proper remedy for one partner against the other to obtain a settlement and payment is an action of account render." (*Course* v. *Prince,* 1 Mill 416; 12 Am. Dec. 649; *Miller* v. *Freeman,* 111 Ga. 654; 51 L. R. A. 504; *Kunneke* v. *Mapel,* 60 Ohio State, 1.)

"The law of partnership is well settled that when the question is one of division of profits the presumption is that the profits are to be divided equally. Furthermore, such equality will be presumed notwithstanding the fact that the contributions to the firm capital are not equal." (22 Am. and Eng. Enc. of Law, 2d Ed., 101; *Johnson* v. *Jackson,* 114 S. W. 260; 130 Ky., 751; *Griggs* v. *Clark,* 23 Calif. 427; *Ratzer* v. *Ratzer,* 28 N. J. Eq. 136.)

"Loyalty to his trust is the first duty which the agent owes to his principal. Without it the perfect relation cannot exist. Reliance upon the agent's integrity, fidelity and capacity is the moving consideration in the creation of all agencies. In some it is so much the inspiring spirit that the law looks with jealous eyes upon the manner of their execution and condemns not only as invalid as to the principle but as repugnant to the public policy everything which tends to destroy that reliance." *(Northwestern National Bank* v. *Great Falls Opera House,* 57 Pac. 440; 23 Mont. 1.)

In the case of *Woodstock Iron Company* v. *Richmond and Danville Extension Company,* 129 U. S. 543; 32 L. Ed. 819,

where the defendant had a contract with the Georgia Pacific Railway company to construct a railroad from Atlanta, Ga., to Columbus, Mississippi, for a consideration of Twenty Thousand Dollars per mile, the Woodstock Iron Company agreed that if the Extension Company would locate the railroad by way of the town of Anniston the Iron Company would convey to the Extension Company divers parcels of land. It was for the enforcement of this contract that the action was brought. The court said:

"A court of equity will not enforce a contract resting upon such official delinquency, or even tending to produce it. Such is the character of the contract before us. If we enforce it we lend the sanction of the court to a class of contracts, the inevitable tendency of which is to make the officers of those powerful corporations pervert their trust to their private gain at the price of injury at once to the stockholders and to the public." (Bell v. McConnell, 37 Ohio St. 396; Clark & Skyles on Agency, Section 781; Findlay v. Pertz, 66 Fed. 427; McKinley v. Williams, 74 Fed. 95.)

### RESPONDENT'S POINTS.

"Still there seems to be ground for a distinction between contracts which are held to be against public policy merely on account of the personal relations of the contractor to the other parties in interest, and those which are void because the thing contracted for is itself against public policy. In the latter class parties acquire no rights which can be enforced either in courts of law or equity. But in the former, the thing contracted for being in itself lawful and beneficial, it would seem unjust to allow the party who may be entitled to avoid it, to accept and retain the benefit without any compensation at all." 6 Ruling Case Law, Sec. 126, p. 720.

The difference between the two classes is that a void contract will not be enforced one way or another by the court even when a party is suffering injustice, the parties being in pari delicto, but a voidable contract will be enforced until it is set aside by the action of the party to it who has a right to object.

This distinction is well settled in the law of this state, and was first enunciated in a case involving money arising from a sale of lottery tickets, the language of the syllabus is:

"Fourth, that both parties being engaged in a criminal enterprise, both are principals under the laws of Utah, and that the relation of agent and principal does not exist." *(Mex. Banking Co.* v. *Lichtenstein,* 10 Utah, 338.)

FRICK, C. J.

The plaintiff, in substance, alleged in his complaint that he and the defendant, at a time stated, entered into an agreement to mine ores under a certain lease which had been entered into with the Gemini Mining Company in the name of the defendant; that the plaintiff agreed to pay the defendant two-thirds of the expenses incurred in mining said ores under said lease, and that the defendant agreed to pay one-third thereof, and that the net proceeds derived from said ores were to be divided between them in that proportion; that the mining company under said lease was to ship, and that it did ship and market, all the ores as mined and retained the title thereto until it had received its royalties under the lease, and after shipping the ores mined as aforesaid said mining company deducted its royalties and paid the remainder to the defendant; that the plaintiff and defendant had continued to mine ores on said terms for some time, and that the proceeds of the shipments had always been divided between plaintiff and defendant in the proportion aforesaid until the last shipment was made under the lease aforesaid; that the last shipment was made in July, 1914, proceeds of which, after the mining company had deducted its royalties and expenses, netted the sum of $1,010.31, all of which was by said company paid to and received by the defendant; that plaintiff is entitled to two-thirds of said amount amounting to $673.54 which he has demanded from the defendant and which defendant refuses to pay plaintiff. Judgment was prayed for that amount, with legal interest from the date it was received by the defendant.

The defendant filed an answer to the complaint in which he, in effect, denied all the allegations of the complaint. There-

after he filed an amended answer in which he, in substance, averred that at the times mentioned in the complaint the plaintiff was an employee of the Gemini Mining Company mentioned in the complaint; that during all of the time that plaintiff and defendant were engaged in mining ores under the lease mentioned in the complaint there was in force a rule which had been promulgated by said company whereby all of its employees, including the plaintiff, were prohibited from being interested in any mining leases covering any of the underground workings of the company's mine; that the plaintiff was employed as an underground foreman in said mine and was charged with the duty of preventing lessors from taking ores outside of the boundary lines of their respective leases, and was also charged with the duty of protecting and preserving the best interests of said company in that regard; that the plaintiff had violated the rule aforesaid and had disregarded the trust imposed on him as aforesaid. The defendant also averred that the contract or agreement existing between the plaintiff and the defendant under which said ore was mined and shipped by reason of plaintiff's misconduct as aforesaid was illegal and void. The defendant prayed judgment ''that the suit of plaintiff be dismissed.'' The cause was tried to the court without a jury. The court found the facts as follows:

''That during the time from the 1st day of January, 1914, to the 10th day of July, 1914, the parties to this cause were engaged in the mining of ores belonging to the Gemini Mining Company under a lease agreement entered into between the said mining company and the defendant herein, Abner Gray; that the said mining was carried on under the name of Abner Gray & Co., the said Gemini Mining Company shipping the lots of ore as mined by Abner Gray & Co. and paying the net proceeds provided for by the said lease agreement by check payable to the said Abner Gray & Co. during all of the said time; that the said Abner Gray & Co. had no fund with which to conduct the said mining operations and was engaged solely in mining ores belonging to the said Gemini Mining Company, the plaintiff, David Mills paying two-thirds of the money necessary to carry on said business and the defendant one-third thereof;

that the net proceeds arising from the sale of ores so mined belonged to the parties hereto individually, and that two-thirds thereof belonged to the plaintiff, David Mills, and one-third to Abner Gray, the said Abner Gray acting during all of the said times herein mentioned as the agent of the said mining company for the purpose of receiving the said money and also acting as the agent of the said David Mills for the sole purpose of receiving it for him and paying it over to him; that on the 10th day of July, 1914, the said Abner Gray was acting as the agent of the plaintiff herein, David Mills, and as such agent received the sum of $673.53, which he upon demand therefor refused and still refuses to pay over to the said David Mills; that while acting as such agent he was not acting in his capacity as partner, but solely as the agent of the plaintiff, David Mills, to receive and pay over money belonging to the said Mills individually.''

The court also found, as a conclusion of law, that the plaintiff was entitled to judgment as prayed for, and entered judgment accordingly.

The defendant has appealed and has assigned numerous errors which his counsel in their brief reduce to five points or propositions. We shall consider those deemed material.

The first point argued is that this is an action at law between partners arising out of partnership transactions and that such an action cannot be sustained. The contention is that the action should have been in equity for an accounting between the partners, and that until an accounting is had and the liabilities of the partnership are ascertained and a balance is struck an action at law by one partner against the other will not lie. The precise question now raised was presented for consideration in the case of *Morgan* v. *Child, Cole & Co.*, 41 Utah, 562, 128 Pac. 521. In that case Mr. Justice Straup, after stating the issues, stated the proposition decided in the following words:

''Upon these issues the case was partially tried to the court and a jury. At the conclusion of plaintiff's evidence, the court, on the defendant's motion, granted a nonsuit on the ground that the contract, and the evidence adduced by the plaintiff, show that he and the defendant were copartners in the transaction, and that an accounting between them was a prerequisite to the maintenance of the action, and 'that the plaintiff had no right to sue the defendant at law,' and had 'mistaken his remedy, if any he has.' A judgment of dismissal was thereupon entered, from

which the plaintiff has prosecuted this appeal. It is seen that the motion was granted and the action dismissed, not on the ground of insufficiency of evidence, but on the ground of a mistaken remedy. We think the trial court erred. In this, as in many other states in which the formal distinctions between actions at law and suits in equity are abolished, the court may administer relief according to the nature of the cause set out, whether it is such as would be granted in equity or such as would be given at law. 3 Cyc. 737. Our Constitution (section 19, art. 8) expressly provides that 'there shall be but one form of civil action, and law and equity may be administered in the same action.' *Volker-Scowcroft Lumber Co.* v. *Vance,* 36 Utah, 348, 103 Pac. 970, 24 L. R. A. (N. S.) 321, Ann. Cas. 1912A, 124.

A party, therefore, is not entitled to have an action dismissed merely because the relief his adversary is entitled to may be equitable rather than legal. That, however, is    1, 2, 3 just what counsel are seeking to accomplish here. The decision in *Morgan* v. *Child, Cole & Co.*, supra, is however, as we have seen, directly contrary to their contention. Moreover, the very case upon which counsel rely, namely, *Kunneke* v. *Mapel*, 60 Ohio St. 1, 53 N. E. 259, avails them nothing. In that case it appeared that the defendant in error, as a partner, commenced an action in equity for an accounting against the plaintiff in error. The plaintiff in error set up as a defense that in a prior action at law he had obtained judgment against the defendant in error upon a certain claim arising out of the partnership transactions sued for in the complaint filed by the defendant in error; that the matters involved in the present action were also involved and adjudicated in the former action. The Supreme Court of Ohio, in the case cited, held that inasmuch as the defendant in error was sued at law he should have set up the matters he is now suing for as a defense in the former action, and having failed to do so he had waived or lost the right to relitigate the matter in the present action. In other words, the matter set up, the court held, was res adjudicata. As pointed out before, the only defense that the defendant pleads in this action is the illegality of the agreement existing between the plaintiff and the defendant under which the ores were mined from which the proceeds that are in question here were derived. Not a word is pleaded in defendant's answer that an accounting is necessary or that there are any partnership liabilities, or any other liabilities for that matter, that were unad-

justed between the plaintiff and the defendant. If we should hold, therefore, that, ordinarily, one partner may not sue his copartner for his share of the profits arising out of partnership transactions until an accounting has been had between the partners and the liabilities have been fully ascertained and adjusted and a balance struck, yet there is absolutely nothing made to appear in this case that such an accounting is necessary or that there are any liabilities owing by the partners to any one which grew out of or had any connection with the mining of the ores in question. If we consider the plaintiff and the defendant partners in that venture the partnership was very limited indeed. If there are no such liabilities therefor, and there is nothing requiring an accounting, we can see no reason whatever why this action to recover plaintiff's alleged share of the proceeds derived from the shipment of ores in question was not as proper as any other action would be. Nor do we see why, as pointed out in *Morgan* v. *Child, Cole & Co.*, supra, all of the matters could not have been determined in this action. That such an action may be maintained under such circumstances is the effect of the authorities. Among others we refer to *Pettingill* v. *Jones*, 28 Kan. 749; *Wheeler* v. *Arnold*, 30 Mich. 304; *Feurt* v. *Brown*, 23 Mo. App. 332. If, therefore, there was any reason why the plaintiff should not have prevailed in this action it was the duty of the defendant to plead it as a defense to the action, and not having done so he cannot now complain.

It is, however, also contended that the plaintiff cannot recover judgment in this case for the reasons pleaded in the answer, namely, that he had violated an alleged rule of the company that an employee cannot be interested in any lease granted by the company for mining ores. There is no evidence in the record that the company ever had promulgated such a rule. The secretary of the mining company testified that he knew of no such rule, but said that it was "understood" that the employees should not be interested in leases, etc. For the purposes of the decision we shall, however, assume that there was such a rule promulgated by the company, and although the plaintiff testified, and his evidence is not contradicted, that he did not know of such a rule, we shall also assume that he did know.

The evidence is without dispute that the defendant turned over to the company all ores mined under the agreement between the plaintiff and the defendant; that after shipping the ores to market, disposing of them and deducting the expenses and the royalties coming to it, the company paid over to the defendant the net proceeds which, except those derived from the last shipment, were divided between plaintiff and defendant, one-third to the latter and two-thirds to the former; that the defendant determined the cost of mining the ores, and when he had done so presented the account to the plaintiff who always paid his two-thirds as agreed upon. Now, if it be assumed that plaintiff transgressed the rule of the company, how is that a defense in favor of the defendant? By what principle of law or rule of morals is the defendant entitled to appropriate plaintiff's money because he might have violated some rule of his employer, the mining company? How does that fact give the defendant any right to claim plaintiff's money? Defendant's counsel have cited and relied upon the following authorities as sustaining their contention: *Bell* v. *McConnell*, 37 Ohio St. 396, 41 Am. Rep. 528; *City of Findlay* v. *Pertz*, 66 Fed. 427, 13 C. C. A. 559, 29 L. R. A. 188; *McKinley* v. *Williams*, 74 Fed. 94, 20 C. C. A. 312, 6 R. C. L. 720, and, 2 Clark & Skyles Agency, Section 781. The principle announced in the foregoing cases is well and clearly stated in 2 Clark & Skyles, Agency, supra, in the following words:

"As a general rule, a broker cannot act as agent for and receive commissions from both parties to the same transaction, unless they are fully informed that he is so acting for both. It is clear, both upon principle and authority, that in case of such double employment he can recover from neither, where his employment by the other has been concealed from and not assented to by the defendant. It is contrary to public policy to allow the broker a right of action against both parties for his commissions, and it is well settled that he does not have such right, although he may have acted in good faith; and evidence cannot be introduced to show a custom or usage among brokers to charge a commission to both parties in such cases."

The same principle is stated in another form in the case of *McKinley* v. *Williams*, supra. In that case the agent so conducted the business intrusted to him by his principal that he

derived profits therefrom, and it was held that he must account to his principal for the profits he thus made 4 and withheld. There is nothing in that case, however, from which any one can conclude that the parties with whom the agent dealt and transacted the business and from whom the profits were derived would have had the right to withhold the money from him merely because he ought to account to his principal. Nor is there anything in any of the other cases cited, or in any other, that sustains counsel's contention as broadly as they make it. It is, however, not even claimed that in this case the plaintiff obtained something that either in law or in equity belonged to his principal, the mining company. If he has obtained anything coming within the rule stated above it is a matter with which the defendant is not concerned. He does not claim that he suffered any loss or even inconvenience by reason of plaintiff's conduct, and hence he cannot complain.

It is, however, contended that the agreement between plaintiff and defendant under which the ores were mined and the proceeds sued for were obtained was against public policy and void. The only authorities cited in support of that contention are those we have already referred to. 5 There certainly is nothing in those cited which sustains counsel's contention, and we know of no reason or authority why the mere private matters between the mining company and its employees respecting the leasing of the company's mining grounds are controlled by the somewhat expansive term of public policy. And if, in some respects, such were the case, yet we cannot see how the defendant can acquire property or money to which he has no legal claim or right except that the plaintiff has violated some rule or public policy which merely affects the plaintiff and another. It is not always easy to determine the precise point where the somewhat indefinite term of public policy begins or where it ends. It is, however, safe to assert that it has never been so applied as to take property or money from one person to give it to another merely because one of them may not in all things have lived up to the moral code. Courts are instituted to enforce legal rights as contradistin-

guished from moral obligations. Where the two unite in the same person, as is very often the case, both are enforced; but where, as here, the legal right is in one against whom the moral obligation is asserted the legal right prevails. As we have seen, the only defense the defendant interposed is that the plaintiff has transgressed against some rule of his principal. If that were so it would be a matter for the plaintiff and his principal to adjust, and the defendant cannot avail himself of it as a defense in a case like this.

Nor is there any merit to the contention that the court erred in not making a finding upon the question of whether the mining company had promulgated the rule contended for by the defendant. As we have shown, even though there were such a rule it cannot aid the defendant.    6, 7 That is, it cannot avail him as a defense to the action. If that be so, then it is wholly immaterial whether there was such a rule or not. The finding would therefore have been on an immaterial matter, and the failure to find upon such matter does not constitute error.

It is, however, also insisted that the findings made are broader than the issues presented by the pleadings. We have set forth the substance of the pleadings and have set forth the findings in full. While it must be conceded that neither are artificially drawn and that both contain    8, 9, 10 evidentiary matter, yet no one can read the findings and not arrive at the conclusion that they are sufficient, and that the mere fact that they are expanded beyond the issues is not prejudicial to the defendant. If the defendant is not prejudiced in a substantial right the judgment cannot be reversed for mere technical errors. Here is a case where the defendant confessedly has in his possession a certain sum of money which in justice and right he should pay to the plaintiff, yet he refuses to do so, not upon any substantial or meritorious ground, but purely upon technical and immaterial grounds. Under such circumstances mere technical errors, however numerous, cannot serve as an excuse to set aside a judgment otherwise right and legal. Nor is there any merit to the contention that the court erred in admitting evidence over the objections and exceptions of the defendant. The case

was tried to the court, and even though it were conceded that the court had committed error in that regard, yet the alleged errors pointed out by counsel in that regard are almost trivial.

Lastly, it is insisted that the judgment is not supported by the findings. As before suggested, a mere cursory reading of the findings will disclose that there is sufficient in them to sustain the judgment, and that this objection should not prevail.

For the reasons stated, the judgment should be, and it accordingly is, affirmed, with costs to respondent.

McCARTY, CORFMAN, THURMAN, and GIDEON, JJ., concur.