2004 UT App 355

**Brittney FENN, Daniel Garriott, and Jane Johnson, Plaintiffs and Appellants,**

v.

**REDMOND VENTURE, INC; and John Does I through X whose true names are unknown, Defendants and Appellees.**

No. 20030946–CA.

Court of Appeals of Utah.

Oct. 15, 2004.

---

Daniel Garriott, Denver C. Snuffer Jr., Nelson Snuffer Dahle & Poulsen, Sandy, and Jesse L. Riddle, Riddle & Associates PC, Draper, for Appellants.

John A. Pearce and Stephanie Pugsley, Jones Waldo Holbrook & McDonough, Salt Lake City, for Appellees.

Before BILLINGS, P.J., BENCH, Associate P.J., and GREENWOOD, J.

## OPINION

BENCH, Associate Presiding Judge:

¶1 Brittany Fenn, Daniel Garriott, and Jane Johnson appeal the district court's order granting summary judgment in favor of Redmond Venture, Inc. RedV, and dismissing claims brought under the Unsolicited Commercial and Sexually Explicit Email Act (the Act). *See* Utah Code Ann. §§ 13–36–101 to–105 (Supp.2003).[1] They also appeal an order denying their motion for discovery under rule 56(f) of the Utah Rules of Civil Procedure.[2] We affirm.

## BACKGROUND

¶2 In September of 2002, Fenn, Garriott, and Johnson all received unsolicited email messages advertising various RedV computer software products. Prior to receiving the email advertisements, Fenn, Garriott, and Johnson had no contact or relationship with

---

1. The Act was repealed effective May 3, 2004. *See* Utah Code Ann. §§ 13–36–101 to–105 (Supp. 2004).

2. In their opening brief, Fenn, Garriott, and Johnson identified an additional issue on appeal: "Whether the [d]istrict [c]ourt's judgment should have been altered or amended when new information [was] brought to its attention?" However, the brief fails to develop this issue. Indeed, the brief does not even cite to rules 59 and 60 of the Utah Rules of Civil Procedure, the rules that govern amendments and relief from judgment. Accordingly, we decline to address this issue. *See State v. Thomas*, 1999 UT 2, ¶ 11, 974 P.2d 269; Utah R.App. P. 24(a)(9) (noting that the opening brief "shall contain the contentions and reasons of the appellant with respect to the issues presented ... with citation to the authorities ... relied on").

RedV. After receiving the unsolicited email messages, Fenn, Garriott, and Johnson filed separate actions alleging that RedV had violated the Act by sending email messages that did not comply with the Act's requirements. The separate actions were later consolidated.

¶ 3 RedV subsequently moved for summary judgment. RedV submitted an affidavit indicating that it does not directly market its software products. Rather, RedV explained that it enters into contracts with promoters that market the products and receive a percentage of sales proceeds. Attached to the affidavit was RedV's standard marketing contract, which contains an "Anti–Spam Agreement" forbidding RedV's promoters from using unsolicited email messages to market the products. There are two different versions of the Anti–Spam Agreement. One version spells out RedV's email policy in greater detail than the other.

¶ 4 The district court granted summary judgment, concluding that "even if the ... entities that sent Plaintiffs the offending [unsolicited commercial email] are ... RedV [p]romoters," RedV could not be held liable under the Act for the actions of its independent contractors. The district court emphasized the importance of RedV's marketing agreement in reaching its conclusion: "RedV's agreements with its [p]romoters outline the established policies of the company with respect to how marketing of RedV's products may, and may not, be conducted."

¶ 5 Fenn, Garriott, and Johnson then filed a motion to alter or amend the judgment and requested discovery pursuant to rule 56(f) of the Utah Rules of Civil Procedure. The district court denied the motion, and this appeal was filed.

## ISSUES AND STANDARDS OF REVIEW

¶ 6 Fenn, Garriott, and Johnson argue that the district court erred in granting RedV's motion for summary judgment. "[I]n reviewing a grant of summary judgment, we view the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party." *Higgins v. Salt Lake County*, 855 P.2d 231, 233 (Utah 1993). Summary judgment is appropriate when

"there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." Utah R. Civ. P. 56(c).

¶ 7 Fenn, Garriott, and Johnson also contend that the district court was obliged to grant their motion for discovery under rule 56(f) of the Utah Rules of Civil Procedure. "We review a district court's rule 56(f) discovery rulings for abuse of discretion." *Grynberg v. Questar Pipeline Co.*, 2003 UT 8,¶ 56, 70 P.3d 1.

## ANALYSIS

### I. Summary Judgment

¶ 8 Fenn, Garriott, and Johnson contend that the district court erred by interpreting the Act to absolve RedV of liability for its promoters' alleged email violations. The Act requires a sender of unsolicited commercial email to include certain information in the subject line and body of each email message. *See* Utah Code Ann. § 13–36–103 (Supp.2003). A person "who sends or causes to be sent" a noncompliant unsolicited commercial email is subject to civil liability. *Id.* §§ 13–36–103,–105. Thus, the Act clearly imposes liability upon a company that causes its independent contractors to send unsolicited commercial email messages in violation of the Act. *See id.* Because "we view the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving part[ies]," we assume that RedV's promoters sent noncompliant email to Fenn, Garriott, and Johnson. *Higgins v. Salt Lake County*, 855 P.2d 231, 233 (Utah 1993). Hence, our inquiry focuses on whether the district court erred in concluding, on undisputed facts, that RedV did not cause its promoters to send the noncompliant email.

¶ 9 Crucial to our inquiry is an understanding of the contractual relationship between RedV and its promoters. RedV submitted an affidavit stating that it requires all promoters to adhere to the terms of a marketing contract. The marketing contract requires promoters to comply with RedV's "Anti–Spam Agreement," which provides: "RedV takes appropriate steps to ensure that any promotion of its products is NOT accom-

plished via unsolicited business electronic communications ("SPAM"). Promoter hereby agrees not to use SPAM in its promotion of RedV's products."

¶ 10 Examining the four corners of the Anti–Spam Agreement, we conclude that it unambiguously prohibits RedV promoters from using unsolicited email messages as a marketing tool. *See Interwest Constr. v. Palmer*, 923 P.2d 1350, 1359 (Utah 1996) ("[W]e first look to the four corners of the contract itself to determine whether it is ambiguous."). Thus, RedV's affidavit, if undisputed, establishes that RedV did not "cause" illegal email to be sent within the meaning of section 13–36–103. As the district court observed: "If [the email messages were] sent by RedV [p]romoters, the actions of those . . . [p]romoters were clearly unauthorized under the explicit terms of RedV's policies."

¶ 11 However, Fenn, Garriott, and Johnson contend that issues of fact precluded the district court's finding that RedV required its promoters to abide by the Anti–Spam Agreement. Rule 56(e) of the Utah Rules of Civil Procedure states that "[w]hen a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading." Accordingly, "[t]he opponent of the motion . . . must file responsive affidavits raising factual issues." *Franklin Fin. v. New Empire Dev. Co.*, 659 P.2d 1040, 1044 (Utah 1983).

¶ 12 In response to RedV's motion for summary judgment, Fenn, Garriott, and Johnson submitted the affidavits of Garriott and Johnson. Both affidavits stated that the unsolicited email messages were sent "by or at the behest of [RedV]." However, this assertion merely echoes, without providing any support for, the complaint's allegation that

"[d]efendant[ ] sent or caused to be sent . . . unsolicited [email messages]." The affidavits, as such, rest upon the mere allegations found in the complaint and fail to raise factual issues.

¶ 13 Fenn, Garriott, and Johnson also argue that the existence of two different versions of the RedV Anti–Spam Agreement leads to the reasonable inference that RedV fabricated the agreements solely for the purpose of this litigation. Fenn, Garriott, and Johnson point out that the second version of the agreement, attached to RedV's affidavit, is far more detailed than the first. However, the provisions of the agreements that ban the use of unsolicited email are practically identical.[3] That RedV produced two slightly different versions of the same agreement does not, by itself, support an inference of fabrication.[4]

¶ 14 Finally, Fenn, Garriott, and Johnson contend that because the email messages advertised RedV products, we must infer that RedV's Anti–Spam Agreement was a sham. This inference is not reasonable based on the record. Although we can properly infer that the email messages were sent by RedV promoters, we cannot, absent additional evidence, infer that RedV encouraged or required its promoters to send the unsolicited email.

¶ 15 In short, Fenn, Garriott, and Johnson presented no evidence suggesting that RedV encouraged or required its promoters to send unsolicited email, or that the Anti–Spam Agreement was a sham. Because no genuine issues of material fact remained, and RedV was entitled to summary judgment as a matter of law, we conclude that the district court did not err in granting judgment in RedV's favor.

---

3. The first version of the agreement states that "RedV network ("RedV") takes maximum steps to ensure that any promotion of its products is NOT accomplished via the Unsolicited Business Email ("SPAM"). As a result, RedV and the Promoter enter into an agreement that the Promoter shall not use SPAM in the promotion of RedV's products." The second version reads, "RedV takes appropriate steps to ensure that any promotion of its products is NOT accomplished via unsolicited business electronic communica-

tions ("SPAM"). Promoter hereby agrees to use SPAM in its promotion of RedV's products."

4. Moreover, we note that Fenn, Garriott, and Johnson brought this issue to the district court's attention after summary judgment had been granted, even though they had access to the first version of the Anti–Spam Agreement before RedV filed its motion for summary judgment.

## II. Discovery under Rule 56(f)

¶ 16 Fenn, Garriott, and Johnson also argue that the district court erred in failing to grant their motion for discovery under rule 56(f) of the Utah Rules of Civil Procedure. However, this argument fails because the motion was not timely filed and did not conform to the requirements of the rule. *See* Utah R. Civ. P. 56(f). "Rule 56(f) allows a party opposing a motion for summary judgment to file an affidavit stating reasons why the party is presently unable to submit evidentiary affidavits in opposition to the moving party's supporting affidavits." *Crossland Sav. v. Hatch,* 877 P.2d 1241, 1243 (Utah 1994). A district court is not required to "grant rule 56(f) motions that are dilatory or lacking in merit." *Id.*

¶ 17 Fenn, Garriott, and Johnson did not file their rule 56(f) motion until almost two weeks after the district court had granted summary judgment.[5] Further, Fenn, Garriott, and Johnson never filed an affidavit explaining why further discovery was necessary. On these facts, we conclude that the district court did not abuse its discretion when it denied the rule 56(f) motion.

## CONCLUSION

¶ 18 For the foregoing reasons, we affirm the district court's grant of summary judgment and its denial of the rule 56(f) motion.

¶ 19 WE CONCUR: JUDITH M. BILLINGS, Presiding Judge and PAMELA T. GREENWOOD, Judge.

---

**5.** In their memorandum in opposition to summary judgment, Fenn, Garriott, Johnson did allude to rule 56(f), but never submitted the required affidavit.