2005 UT App 214

Shirlie J. CHARLESWORTH, Jack G. Charlesworth, Rennly J. Charlesworth, Jace Martinson, GayLee C. McEwan, and Mirid Weidner, all individuals, Plaintiffs and Appellees,

v.

Arie William REYNS, Ruth C. Reyns, and Alan W. Reyns, as Joint Trustees under Trust Agreement dated August 27, 1985; Ruell Investments Co., a Utah general partnership; and Ruth C. Reyns, Raymond E. Isom, Colleen Ruth Isom Findley, and Patrick Isom, all individuals, Defendants and Appellants.

No. 20040460-CA.

Court of Appeals of Utah.

May 12, 2005.

ing death or serious bodily injury." Utah Code Ann. § 76-1-601(5)(a),(b) (2004).

Brad C. Smith, H. Thomas Stevenson, and Benjamin C. Rasmussen, Ogden, for Appellants.

Arthur B. Berger and Carolyn Clark, Salt Lake City, for Appellees.

Before BENCH, Associate P.J., GREENWOOD, and THORNE, JJ.

## OPINION

BENCH, Associate Presiding Judge:

¶1 Arie William Reyns, Ruth C. Reyns, and Alan W. Reyns [1] (Defendants) appeal the district court's order granting summary judgment in favor of Plaintiffs on Plaintiffs' claims of breach of contract, breach of fiduciary duty, conversion, and constructive trust. We affirm in part and reverse in part.

## BACKGROUND

¶2 The dispute in this case stems from a contract to purchase an apartment complex, the creation of a partnership, and the execution of a trust agreement. On March 22, 1963, Defendant Ruth Reyns and Ellen Isom entered into a contract to purchase an apartment complex (the complex) from their parents, Ben and Margaret Charlesworth. Under the terms of the sales contract, Ruth Reyns owned a two-thirds interest in the contract and Ellen Isom retained the remaining one-third interest.

¶3 Contemporaneous with the execution of the purchase contract, Ruth Reyns and Ellen Isom entered into an agreement creating a partnership, Ruell Investment Company. As part of the agreement, both partners assigned their interests in the purchase contract to the partnership. The partnership agreement stated Ruth Reyns's intent to transfer one-half of her interest in the partnership to Plaintiff Shirlie Charlesworth, the daughter-in-law of Ben and Margaret Charlesworth, to be held in trust for the

benefit of the minor children of Shirlie Charlesworth (the Charlesworth children).

¶4 Also on March 22, 1963, Ruth Reyns transferred one-half of her interest in the contract to Shirlie Charlesworth. Ellen Isom consented to this transfer. Shirlie Charlesworth was made a partner in the partnership and a trustee according to the terms of a trust agreement (the Charlesworth Trust) executed the same day. Thus, as a result of this arrangement, Ruth Reyns, Ellen Isom, and Shirlie Charlesworth each retained an undivided one-third interest in the contract.

¶5 Pursuant to the contract and the Charlesworth Trust, certain title documents were placed in escrow. The first of these was a warranty deed conveying a two-thirds interest in the complex to Ruth Reyns and a one-third interest to Ellen Isom. This deed was to be delivered upon the completion of the payments under the contract. The second escrow document was a quitclaim deed conveying a one-third interest in the complex from Ruth Reyns to Shirlie Charlesworth. This quitclaim deed was to be delivered to Shirlie Charlesworth at the time the purchase price of the complex was paid in full. The Charlesworth Trust provided that the Charlesworth children were to receive their interest in the trust principal when the youngest child reached the age of 21.

¶6 Ruth Reyns, as the managing partner, paid any net profits derived from operation of the complex to the partners annually. Initially, Ruth Reyns paid the Charlesworth children's one-third share of the profits to Shirlie Charlesworth's husband. Later, Ruth Reyns made the payments directly to the Charlesworth children as each child reached the age of majority. These payments continued until 1985. In addition, Ruth Reyns annually sent the Charlesworth children Federal Income Tax Schedules K–1 of Form 1065, titled "Partner's Share of Income, Credits, Deductions, Etc."

¶7 In 1983, the purchase price of the property was paid in full. The warranty deed, conveying a two-thirds interest to Ruth Reyns and a one-third interest to Ellen Isom

---

1. The other defendants were dismissed from this action on Plaintiffs' motion in the district court.

was delivered to Ruth Reyns. In contravention of the escrow agreement, the quitclaim deed signed by Ruth Reyns conveying a one-third interest to Shirlie Charlesworth was delivered to Ruth Reyns instead of Shirlie Charlesworth.[2] Ruth Reyns never delivered the deed to Shirlie Charlesworth or the Charlesworth children.

¶ 8 In 1985, Ruth Reyns conveyed a two-thirds interest in the complex to herself, Defendant Arie William Reyns, and Defendant Alan W. Reyns, as joint trustees under the Reyns Family Trust. Ruth Reyns tendered no consideration to the partnership and did not inform Plaintiffs of the conveyance.

¶ 9 In 1988, Ellen Isom died, but no steps were taken to wind up the partnership. Isom's one-third share in the complex, which was unaffected by Ruth Reyns's trust conveyance, was then transferred to Raymond Isom, Patrick Isom, and Colleen Isom Findlay (the Isoms).

¶ 10 Having received no cash distributions for several years, Plaintiff GayLee McEwan, one of the Charlesworth children, sent a letter to the Reynses in the fall of 1988, inquiring as to why the distributions had ceased. In response, Arie William Reyns wrote a letter explaining that rising taxes and maintenance costs coupled with a sluggish rental market prevented the partnership from realizing any net profits. Arie William Reyns also explained that the complex was for sale, but that a suitable buyer had not been found. A similar letter was sent the following year.

¶ 11 Ruth Reyns continued to send schedules K–1 to Plaintiffs until 1992. In September 1994, Plaintiff Rennly Charlesworth phoned the Reynses, and asked why no schedules K–1 had been produced for the 1993 tax year. Ruth Reyns explained that the partnership was "over."

¶ 12 In June of 1996, the joint trustees of the Reyns Family Trust and Raymond Isom sold all interest in the complex to third parties. A counteroffer included in the purchase contract described the seller as "Ruell Investments" and explained that the sale was "subject to the approval of all partners." However, Plaintiffs were neither consulted nor told of the sale. One-third of the purchase proceeds went to the Isoms, and the remainder was paid to Defendants as joint trustees of the Reyns Family Trust. Plaintiffs did not learn of the sale until the summer of 1997.

¶ 13 Plaintiffs filed suit on October 8, 1996. Plaintiffs later filed a motion for partial summary judgment on their claims of breach of contract, breach of fiduciary duty, conversion, and constructive trust. In response, Defendants filed a cross-motion for summary judgment, arguing that all of Plaintiffs' claims were barred by the statutes of limitations. In addition, Defendants specifically contended that the district court should not grant Plaintiffs' motion because an equitable accounting was a prerequisite to the claims Plaintiffs presented for summary judgment.

¶ 14 The district court rejected Defendants' arguments, finding that the discovery rule tolled the applicable statutes of limitations and that an equitable accounting was not required in this case. Thus, the district court granted Plaintiffs' motion on their claims for breach of contract, breach of fiduciary duty, conversion, and constructive trust. Later, Plaintiffs moved to dismiss the remaining defendants and claims, including the claim for an equitable accounting. Defendants did not object to this motion. The district court then entered judgment for Plaintiffs in the amount of $116,666.67, a sum representing one-third of the purchase proceeds. Defendants, who did not dispute this sum nor seek any offset for partnership expenses, now appeal.

## ISSUES AND STANDARDS OF REVIEW

¶ 15 Defendants present two issues on appeal. First, Defendants argue that the dis-

---

**2.** Defendants argue for the first time on appeal that although Ruth Reyns signed an escrow receipt acknowledging delivery of the quitclaim deed, she never actually received the deed. Because Defendants failed to contest Plaintiffs' version of this event in their memorandum in support of their motion opposing summary judgment, we deem Plaintiffs' version of the event admitted.

trict court erred in granting summary judgment because Plaintiffs were required to seek an accounting before pursuing other claims. Second, Defendants argue that Plaintiffs' claims are untimely and the discovery rule does not toll the applicable statutes of limitations.

¶ 16 "Summary judgment is appropriate when 'there is no genuine issue as to any material fact' and 'the moving party is entitled to a judgment as a matter of law.' " *Fenn v. Redmond Venture, Inc.*, 2004 UT App 355, ¶ 6, 101 P.3d 387 (quoting Utah R. Civ. P. 56(c)). Furthermore, " '[t]he applicability of a statute of limitations and the applicability of the discovery rule are questions of law, which we review for correctness.' " *Russell/Packard Dev., Inc. v. Carson*, 2005 UT 14, ¶ 18, 108 P.3d 741 (quoting *Spears v. Warr*, 2002 UT 24, ¶ 32, 44 P.3d 742).

## ANALYSIS

### I. The Equitable Accounting Requirement

¶ 17 As a general rule, a partner cannot bring an action at law concerning partnership transactions against a co-partner without first seeking an accounting. *See Cheves v. Williams*, 1999 UT 86, ¶ 34, 993 P.2d 191 (observing that "the Utah Partnership Act ... provides that the only remedy among co-partners is an accounting"); *Mills v. Gray*, 50 Utah 224, 167 P. 358, 359–60 (1917) ("[O]rdinarily, one partner may not sue his co[-]partner for his share of the profits arising out of partnership transactions until an accounting has been had between the partners ...."); *Wanlass v. D Land Title*, 790 P.2d 568, 571–73 (Utah Ct.App.1990) (holding that a partner's heir was required to await the results of a formal accounting "before pursuing additional remedies").

¶ 18 One of the principal purposes of the general rule is to allow the court to ascertain whether the plaintiff-partner is liable to a defendant-partner with regard to other partnership debts. *See Bankers' Trust Co.*, 190

P. at 1115; *Mills*, 167 P. at 360; 68 C.J.S. *Partnership* § 109 (1998). Thus, the rule is designed to avoid "premature and piecemeal judgments among partners." *Sertich v. Moorman*, 162 Ariz. 407, 783 P.2d 1199, 1202 (1989). However, the rule is subject to exception in situations where this policy rationale is not implicated. *See Mills*, 167 P. at 360; 59A Am.Jur.2d *Partnership* § 351 (2003) (citing cases recognizing exceptions to the rule); 68 C.J.S. *Partnership* § 109 (same). For example, in *Mills*, the Utah Supreme Court held that the general rule did not apply where the activities of the partnership were "very limited" and there was no allegation that there were "any liabilities owing by the partners to anyone." 167 P. at 360.

¶ 19 In the present case, the district court, although not citing *Mills*, applied a *Mills*-like analysis and determined that an accounting was unnecessary because Plaintiffs' claims did not involve complex accounting issues.[3] We hold that the present case is controlled by *Mills*.

¶ 20 *Mills* involved a claim for breach of contract arising from a partnership agreement. *See id.* at 358. Under the agreement, the plaintiff and the defendant were to share profits derived from the sale of ore produced by the partnership's mining operation. *See id.* The partners regularly divided sale proceeds according to the agreement. *See id.* However, when the defendant received the proceeds from the final shipment of ore, he refused to pay the plaintiff his share under the agreement. *See id.* The plaintiff sued on the contract.

¶ 21 The defendant contended that the plaintiff was precluded from bringing his contract claim without first bringing a claim for an equitable accounting. *See id.* at 359. Rejecting this argument, the Utah Supreme Court held that because the partnership "was very limited," there was "nothing requiring an accounting." *Id.* at 360. In addition, the

---

**3.** The district court also applied the exception discussed in *Wanlass v. D Land Title Co.*, 790 P.2d 568 (Utah Ct.App.1990). In *Wanlass*, this court acknowledged that the accounting-first rule might be inapplicable where the plaintiff's suit arises from a co-partner's wrongful dissolution of the partnership. *See id.* at 572 (citing *Jeaness v. Besnilian*, 101 Nev. 536, 706 P.2d 143, 145–146 (1985)). Because we conclude that the exception found in *Mills v. Gray*, 50 Utah 224, 167 P. 358 (1917), applies, we do not discuss the applicability of *Wanlass*.

court observed that, "[n]ot a word is pleaded in defendant's answer that an accounting is necessary or that there are any partnership liabilities . . . that were unadjusted between the plaintiff and the defendant." *Id.* The court concluded that "[i]f . . . there was any reason why the plaintiff should not have prevailed in this action it was the duty of the defendant to plead it as a defense to the action, and not having done so he cannot now complain." *Id.*

¶ 22 Applying the principles articulated in *Mills*, we conclude that an equitable accounting is unnecessary in this case. First, the dispute between the parties concerns a very limited aspect of the partnership business. The issue is simply whether Plaintiffs are entitled to a share of the proceeds received by Defendants for the sale of the complex. Much like the claim in *Mills*, Plaintiffs' claim only involved a single transaction. Defendants did not argue below that Plaintiffs were liable for other debts incurred by the partnership.[4] Thus, the efficiency rationale undergirding the accounting-first rule is not implicated.

¶ 23 Second, Defendants, like the defendant in *Mills*, merely insisted that an accounting was required without pointing to facts that demonstrated the necessity of an accounting. We note that Plaintiffs initially brought a claim for an accounting, which was later dismissed on Plaintiffs' own motion. Defendants did not oppose this motion, nor did they did attempt to bring a counterclaim for an accounting. We conclude that Defendants had a duty under these circumstances to properly raise the accounting defense,

"and not having done so [they] cannot now complain." *Id.*

## II. The Discovery Rule

¶ 24 Defendants assert that Plaintiffs' claims, which would normally be barred by the statutes of limitations, cannot be saved by application of the discovery rule. "As a general rule, a statute of limitations begins to run 'upon the happening of the last event necessary to complete the cause of action.' " *Russell/Packard Dev., Inc. v. Carson*, 2005 UT 14, ¶ 20, 108 P.3d 741 (quoting *Myers v. McDonald*, 635 P.2d 84, 86 (Utah 1981)). However, the equitable discovery rule operates "to toll an otherwise fixed statute of limitations period [in] the following two situations: (1) 'where a plaintiff does not become aware of the cause of action because of the defendant's concealment or misleading conduct,' and (2) 'where the case presents exceptional circumstances . . . .' "[5] *Id.* at ¶ 25 (citations omitted). We analyze Plaintiffs' claims under the concealment version of the discovery rule.[6]

¶ 25 The concealment version of the discovery rule requires Plaintiffs to first make a prima facie showing that Defendants' actions amounted to fraudulent concealment. *See id.* at ¶ 38. Second, Plaintiffs must show that "(1) they neither knew nor reasonably should have known of the facts underlying their causes of action before the . . . limitations period expired; or (2) notwithstanding their actual or constructive knowledge of the facts underlying their causes of action within the limitations period, Plaintiffs acted reasonably" by delaying the filing of a complaint

---

4. On appeal, Defendants suggest that an accounting is necessary because Plaintiffs, if entitled to a share of the complex sale proceeds, are also liable to the partnership for expenses incurred in selling the property. Because Defendants present this argument for the first time on appeal, we do not consider it.

5. The Utah Supreme Court recently explained the difference between the equitable discovery rule and the statutory discovery rule. *See Russell/Packard Dev., Inc. v. Carson*, 2005 UT 14, 108 P.3d 741. A statutory discovery rule applies where "a relevant statute of limitations, by its own terms, mandates application of the discovery rule." *Id.* at ¶ 21. The equitable discovery

rule, unlike a statutory discovery rule, does not operate automatically and requires an examination of the parties' conduct. *See id.* at ¶ 26. Because the claims at issue here do not involve a statutory discovery rule, we analyze the claims in light of the equitable discovery rule only.

6. The district court also analyzed Plaintiffs' claims under the exceptional circumstances version of the discovery rule. Because we hold that Plaintiffs have made a prima facie showing of fraudulent concealment, it is unnecessary for us to determine the applicability of the exceptional circumstances version of the discovery rule.

until after the expiration of the limitations period. *Id.* at ¶ 33.

■ ¶ 26 First, we conclude that Plaintiffs have made a prima facie showing of fraudulent concealment. A fiduciary's breach of the " 'duty to speak the truth' " is sufficient to establish fraudulent concealment. *Russell/Packard Dev., Inc. v. Carson,* 2003 UT App 316,¶ 25, 78 P.3d 616, *aff'd as to result,* 2005 UT 14, 108 P.3d 741 (quoting *Chapman v. Primary Children's Hosp.,* 784 P.2d 1181, 1186 (Utah 1989)).

¶ 27 Here, Defendant Ruth Reyns had a duty to inform Plaintiffs of changes in the ownership status of the partnership assets. Notwithstanding this duty, Ruth Reyns failed to inform Plaintiffs of her receipt of the quitclaim deed in 1983 that conveyed a one-third interest in the complex to Plaintiff Shirlie Charlesworth. Moreover, Ruth Reyns transferred a two-thirds interest in the complex to herself, Defendant Arie Reyns, and Defendant Alan Reyns as joint trustees of the Reyns Family Trust in 1985 without informing Plaintiffs. The failure to notify Plaintiffs of the receipt of the quitclaim deed and the transfer of partnership property were the acts that gave rise to Plaintiffs' claims. Defendant Ruth Reyns's failure to disclose these acts prevented Plaintiffs from discovering their claims. Thus, the failure to disclose the receipt of the quitclaim deed and the transfer are sufficient to establish a prima facie showing of fraudulent concealment.

¶ 28 Second, we conclude that unsettled factual issues preclude summary judgment on the question of whether Plaintiffs neither "knew nor reasonably should have known of the facts underlying their causes of action before the … limitations period expired." *Russell/Packard,* 2005 UT 14 at ¶ 33, 108 P.3d 741.

■ ¶ 29 Defendants argue that Plaintiffs received inquiry notice of the potentially wrongful transfer on several occasions prior to the expiration of the applicable statutes of limitations. Under Defendants' view, Plaintiffs are chargeable with constructive notice of their claims as a matter of law. Our supreme court has held otherwise. *See id.* at ¶ 38. "The problem with Defendants' argu-

ment is that … inquiry notice operates differently 'when a plaintiff alleges that a defendant took affirmative steps to conceal the plaintiff's cause of action.' " *Id.* (quoting *Berenda v. Langford,* 914 P.2d 45, 51 (Utah 1996)). That is, after a plaintiff makes a prima facie demonstration of fraudulent concealment, "[the] plaintiff will be charged with constructive notice of the facts forming the basis of a cause of action only at that point at which a plaintiff, reasonably on notice to inquire into a defendant's wrongdoing, would have … discovered the facts … despite the defendant's efforts to conceal [them]." *Id.* (citing *Berenda,* 914 P.2d at 51–52).

■ ¶ 30 Moreover, "[t]he question of when a plaintiff reasonably would have discovered the facts underlying a cause of action in light of a defendant's affirmative concealment is a 'highly fact-dependent legal question[ ]' that is 'necessarily a matter left to trial courts and finders of fact.' " *Id.* at ¶ 39 (second alteration in original) (quoting *Berenda,* 914 P.2d at 53). Thus, the type of factual findings required to determine the reasonableness of a plaintiff's actions normally "preclude summary judgment in all but the clearest of cases." *Berenda v. Langford,* 914 P.2d 45, 54 (Utah 1996).

¶ 31 The facts in this case are not "so clear that reasonable persons could not disagree about the underlying facts or about application of the governing legal standard to the facts." *Id.* "Consequently, it would be inappropriate for this court to make a factual determination as to when Plaintiffs should be charged with constructive notice of their claims." *Russell/Packard Dev., Inc. v. Carson,* 2005 UT 14,¶ 40, 108 P.3d 741. We remand to allow the district court to determine: (1) whether Plaintiffs "neither knew nor reasonably should have known of the facts underlying [their] cause[s] of action" prior to the expiration of the applicable statutes of limitations; or "(2) that notwithstanding [Plaintiffs'] actual or constructive knowledge of the facts underlying [their] cause[s] of action within the limitations period, a reasonably diligent plaintiff may have delayed in filing his or her complaint until after the statute of limitations expired." *Id.* at ¶ 44.

CONCLUSION

¶ 32 Plaintiffs were not required to seek a formal accounting under the facts of this case. The simplicity of Plaintiffs' claims, coupled with Defendants' failure to properly raise the accounting defense below, make an accounting unnecessary. *See Mills v. Gray,* 50 Utah 224, 167 P. 358, 359–60 (1917).

¶ 33 Issues of fact prevent us from determining the applicability of the discovery rule to this case. Under the concealment version of the rule, Plaintiffs have made a prima facie showing of fraudulent concealment, but fact issues remain concerning the reasonableness of Plaintiffs' conduct. *See Russell/Packard Dev., Inc. v. Carson,* 2005 UT 14, ¶ 25, 108 P.3d 741.

¶ 34 Accordingly, we affirm in part and reverse in part the district court's entry of summary judgment in this case.

¶ 35 WE CONCUR: PAMELA T. GREENWOOD and WILLIAM A. THORNE JR., Judges.