CHARLES JEANESS AND IRENE JEANESS, APPELLANTS AND CROSS-RESPONDENTS, *v.* SIMON BESNILIAN AND GLENDA BESNILIAN, RESPONDENTS AND CROSS-APPELLANTS.

No. 15415

September 24, 1985                                        706 P.2d 143

[Rehearing denied December 31, 1985]

*Beasley, Hamilton & Holden,* Reno, for Appellants and Cross-Respondents.

*John Sanchez* and *Richard L. Davenport,* Reno, for Respondents and Cross-Appellants.

## OPINION

*Per Curiam:*

In October, 1978, following previous negotiations, Charles Church (Church) offered both Society Cleaners and Artist Cleaners to Simon Besnilian (Besnilian) for the sum of $350,000. About the same time Charles Jeaness (Jeaness) had indicated to Besnilian that he had some money he wanted to invest. Besnilian and Jeaness entered into negotiations with each other and orally agreed to purchase the two cleaners together.

In early November, Besnilian and Jeaness informed Church of the agreement. With respect to the $100,000 down payment required by Church, it was understood that each was to pay the sum of $50,000. Subsequently, on December 26, 1978, Besnilian

and Jeaness agreed with Church, in writing, to purchase Society and Artist Cleaners.

Prior to the beginning of business operations, Jeaness paid Church the sum of $25,000 in partial satisfaction of the required down payment. The balance was not due until February 23, 1979. Besnilian gave Jeaness a check on January 4, 1979, for $13,116.50. This sum represented his half of the payment made and the additional sum represented his share of expenses already incurred by Jeaness.

Several weeks later, a dispute arose between Jeaness and Besnilian. This dispute eventually resulted in the cessation of their relationship. The lower court properly found that Jeaness, by excluding Besnilian from the operation of the cleaning establishment, had committed a breach of the oral partnership agreement.

On February 1, 1979, Jeaness went to the law offices of Gary Nelson and asked him to prepare a letter advising Church that Jeaness had no intention of continuing his business relationship with Besnilian. Shortly thereafter, Besnilian received the letter and, as a result, a meeting between all parties was scheduled for February 4, 1979. On that date, counsel and all parties met in an attempt to resolve the problems which existed between Jeaness and Besnilian. After it became clear the relationship could not be salvaged, Church said he would sell the business to either of them individually.

Following this meeting, on February 7, 1979, Besnilian's counsel wrote to Gary Nelson, informing him that Besnilian was willing and able to proceed with the purchase of the cleaners and, further, that he was prepared to deposit $37,500, which represented his half of the down payment that was still owed.

On February 20, 1979, Besnilian filed suit against Jeaness and Church in the Washoe County Court. Thereafter, Church sought authorization from the Washoe County District Court to sell the cleaners to any third party. As a result of this communication, all parties entered into an agreement on March 30, 1979, which provided, in substance, that Church could sell the cleaners in order to keep them out of limbo and operational, but only to Mr. and Mrs. Jeaness. In addition, each party agreed they would not interpose the agreement or the terms and conditions thereof in support of a claim, as a defense, or in mitigation of damages.

On May 1, 1979, Church sold the cleaners to Mr. and Mrs. Jeaness on the same terms as the December 26, 1978, agreement. Jeaness paid the down payment. Following the purchase, Jeaness was the sole owner, and was so for approximately seven months. Needing assistance to operate the cleaners, Jeaness conveyed a one-half interest in the cleaners to Dennis Church. In return,

Dennis Church managed both cleaners and furnished his assistance, knowledge and expertise of the dry cleaning business.

On February 1, 1981, J. Cashew Corporation purchased the cleaners for $600,000. J. Cashew made a $24,000 down payment, assumed various accounts payable, and executed a promissory note to Jeaness and one to Dennis Church.

■■■■■

The trial court awarded Besnilian damages against Jeaness under the breach of contract claim. The lower court found Jeaness committed a breach of the oral partnership agreement entered into with Besnilian to purchase and operate the cleaners. Because there is substantial evidence in the record to support the findings and judgment of the district court in this regard, we must affirm the lower court's decision. Udevco, Inc. v. Wagner, 100 Nev. 185, 678 P.2d 679 (1984). Nevertheless, the damage award to Besnilian in the amount of $112,500 was improper. Fifty thousand dollars represented one-half the profits supposedly made during the 25 months of ownership by Jeaness and the $62,500 was to compensate Besnilian for one-half the net profits realized by the sale to J. Cashew, discounted to present value. In addition, the lower court awarded Besnilian prejudgment interest. Our review of the facts of this case and the record convinces us that the lower court erroneously determined the amount of damages to which Besnilian was entitled.

■■■■■

Where a partner wrongfully repudiates the partnership and converts the assets of the partnership to his own use and benefit, the excluded partner has a choice of alternative remedies:

> [H]e may waive the tort or breach and sue to specifically enforce the partnership or joint venture agreement, including the remedy of a judicial dissolution and an accounting and if necessary (as an auxiliary remedy) to impress a trust on partnership or joint venture property, . . . or the victim may submit to the repudiation and sue for damages for breach of the joint venture agreement (including "profits which might have been made") the same as any other action for damages for breach of any other contract.

Gherman v. Colburn, 72 Cal.App.3d 544, 140 Cal.Rptr. 330, 343 (1977).

■■■■■.

At trial, Besnilian's counsel informed Judge Guinan that they were not seeking specific enforcement of any partnership agreement. Besnilian elected to sue for damages for breach of the

agreement. Obviously, Besnilian is entitled to recover any lost profits he has suffered. Therefore, our inquiry must now be directed to the amount of lost profits Besnilian is entitled to receive as damages.

Between the period of January 1, 1979, to December 1, 1979, Jeaness was, in essence, the sole owner of the cleaners. Besnilian was therefore entitled to, and was awarded, one-half of the profits of the cleaners attributable to the operations of that period. However, as a result of Jeaness' inexperience and need for assistance in operating the cleaners, a legitimate and apparently necessary decision was made to sell a one-half interest in the cleaners to secure the management and expertise needed to maintain the operation of the cleaners. Accordingly, from the time of the sale, the profits Jeaness received were decreased by one-half. It would be unjust to require Jeaness to forfeit his entire share of these profits to Besnilian despite the bona fide management decision to sacrifice equity in order to maintain a profitable operation. Hence, Besnilian's share of the profits must also be decreased by one-half after the transfer of interest to Dennis Church. In other words, after Jeaness relinquished a one-half interest in the cleaners, Besnilian was thereafter entitled to one-quarter of the profits realized by the business.

The trial court determined that the cleaners netted approximately $4,000 a month. Therefore, Besnilian is entitled to the sum of $2,000 per month or a total of $22,000 for the eleven-month period when Jeaness was the sole owner of the business. With respect to the remaining fourteen months for which damages are to be computed, the business ownership was divided between Jeaness and Church. During the latter period, Besnilian was entitled to one-half of Jeaness' profits, or one-quarter of the profits of the business. Besnilian is therefore entitled to $14,000 for this period. Similarly, because Jeaness only owned a one-half interest in the cleaners when they were sold, Besnilian's damage was $31,250, as opposed to the $62,500 awarded by the trial court. Accordingly, the total amount of damages Besnilian should receive for lost profits is $67,250.

However, in an action such as this, the expenses saved because of the wrongful act of the defendant must be subtracted from any recovery. 22 Am.Jur.2d *Damages* § 178 at 253. The record indicates that Jeaness paid the $100,000 down payment to Church. Thus, Besnilian did not have to pay the sum of $37,500 which represented the remainder of his share of the down payment. Therefore, Besnilian's damages must be reduced by that amount.

Finally, the trial court awarded Besnilian interest on the judgment from the date of service of the summons and complaint at the rate of 8 percent per annum until July, 1981, and thereafter at a rate of 12 percent per annum until July 15, 1983.

This Court reviewed in depth the question of the allowance of prejudgment interest in Paradise Homes, Inc. v. Central Sur. & Ins. Corp., 84 Nev. 109, 437 P.2d 78 (1968). In determining whether prejudgment interest should be allowed a two-fold standard was suggested. First, "three items must be determined to enable the trial courts to make an approximate award of interest: (1) the rate of interest; (2) the time when it commences to run; and (3) the amount of money to which the rate of interest must be applied." Second, the interest runs from the time the money becomes due. The court explained:

> The amount of money to which the interest rate will be applied must be determined by the following factors: (1) if the contract breached provides for a definite sum of money, that sum; (2) if the performance called for in the contract, the value of which is stated in money or is ascertainable by mathematical calculation from a standard fixed in the contract or from established market prices of the subject matter, that sum. Pre-judgment interest shall be allowed on the amount of the debt or money value so determined, after making all the deductions to which the defendant may be entitled.

*Id.* at 116-17.

The agreement entered into between Jeaness and Besnilian did not provide for a definite sum of money, the value of performance was not stated nor "ascertainable by mathematical calculation from a standard fixed in the contract or from established market prices." In effect, the amount due was unknown and unascertainable until rendition of the judgment and therefore did not become due until then. To award prejudgment interest in this case was improper.

As a final concern, we direct our attention to Besnilian's cross-appeal concerning the lower court's alleged improper treatment of the businesses' allowable depreciation. We have reviewed the record and are unable to say the lower court erred by deducting the amount of depreciation from the gross income of the cleaning establishments in determining the net income for which Jeaness was accountable. The circumstances surrounding this case do not reflect that the trial court's finding, in this regard, is clearly erroneous. Accordingly, it will not be set aside. Udevco, Inc. v. Wagner, 100 Nev. 185, 678 P.2d 679 (1984).

The premises upon which the cleaners were located were leased. Hence, the majority of the businesses' assets were fixtures of the type which rapidly depreciate. Moreover, it was Jeaness who supplied most of the risk capital for the cleaners' operation. Therefore, based upon the circumstances of this case, we decline to hold the amount deducted for depreciation should have been included as net income. *See* Stoner v. Stoner, 307 A.2d 146, 152 (Conn. 1972).

We have considered the remaining contentions of error addressed by the parties and consider them to be without merit. In conclusion, Besnilian is entitled to $29,750 in damages. Accordingly, with the exception of the issues disposed of herein, we affirm the remainder of the lower court's decision.