**Norma S. WANLASS, individually and as personal representative of the estate of Jackson Wanlass, deceased, Plaintiff, Appellant and Cross–Respondent,**

v.

**D LAND TITLE, a corporation; Corwin Ogden for the estate of D.W. Ogden, deceased; Corwin Ogden and Merrill Ogden; Family Finance Fund; and Do Company, Defendants, Respondents and Cross–Appellants.**

No. 880352–CA, 880425–CA.

Court of Appeals of Utah.

April 2, 1990.

---

Jackson Howard (argued), Fred D. Howard, Leslie W. Slaugh, Provo, for plaintiff, appellant and cross-respondent.

Tex R. Olsen (argued), Ken Chamberlain, Richfield, for defendants, respondents and cross-appellants.

Before DAVIDSON, BENCH and GARFF, JJ.

## OPINION

DAVIDSON, Judge:

This matter comes to the court on cross-interlocutory appeals. We affirm.

## FACTS

In 1943, Jackson Wanlass (hereinafter "Wanlass") began working in the Sanpete County Recorder's Office, first as Deputy County Recorder and later as County Recorder. While in the Recorder's Office he became acquainted with D.W. Ogden (hereinafter "Ogden"), an abstractor, who oper-

ated a private title business and frequently solicited Wanlass's assistance in searching titles. Initially, Wanlass worked part-time for Ogden while still employed at the Recorder's Office. Later, the two opened a private title business in Manti, Utah, named D Land Title. Wanlass searched titles and ran the day-to-day operations while Ogden held the brokering license and provided an underwriter.

The Manti operation was very successful. Wanlass prepared title documents and foreclosure reports and issued title insurance. He collected fees directly from the clients keeping a percentage for himself and remitting the remainder to Ogden. Ogden paid the monthly utility and underwriter fees and, in 1975, also began paying Mrs. Wanlass fifty dollars a month. Wanlass paid various monthly expenses from his share including $100 to Mrs. Wanlass, $200 for rent and mortgage, and beginning in 1982, fifty percent of his share was paid to Doug Neeley, Wanlass's son-in-law.

On August 5, 1984, Ogden died. A few days after Ogden's death, Wanlass and his family met with the Ogden children to discuss the continued operation or sale of the business. The parties were unable to reach an acceptable resolution. Six weeks later, Wanlass died. After Ogden's death, but before Wanlass's death, the business continued operation initially by Wanlass and his family and later by Ogden's children. Wanlass's son-in-law then left the business and began working for a competing title company. D Land Title is apparently still being operated by the Ogden children.

After Wanlass's death, Mrs. Wanlass filed suit alleging that a partnership existed between D.W. Ogden doing business as D Land Title and Jackson Wanlass. She also claimed that the Ogden children wrongfully excluded her from the business and converted partnership funds. Ogden's children counterclaimed, arguing that Wanlass was only a commissioned agent of D Land Title. The case proceeded to trial where the jury determined by a special verdict that "the Manti Office of D Land Title [was] operated as a partnership be-tween D.W. Ogden/D Land Title and Jackson Wanlass" with Wanlass owning 45% and D.W. Ogden/D Land Title owning 55%. After the verdict, the trial judge dismissed the jury and ordered the parties to wind up the partnership pursuant to the Utah Partnership Act, Utah Code Ann. §§ 48–1–1 to –40 (1989). Each party initially submitted a proposed plan to conclude the partnership and the names of three potential receivers. A receiver was appointed to perform an accounting, but appellant objected, claiming entitlement to the alternative remedy of damages for wrongful termination and conversion.

## SUMMARY OF ARGUMENTS

Mrs. Wanlass does not dispute the jury's partnership determination, but argues that she is entitled to damages for conversion or, alternatively, 45% of $195,523.43, the alleged value of the partnership on the date of Wanlass's death. Respondents cross-appeal and argue that no partnership existed. We find that the jury's partnership determination was not erroneous and uphold the trial court's rulings in which it ordered a wind up of the partnership and an accounting in accordance with the Utah Partnership Act.

## PARTNERSHIP

A. *Standard of Review*

◼ We first consider whether the jury correctly decided the partnership issue. "To successfully attack the verdict, an appellant must marshall all the evidence supporting the verdict and then demonstrate that, even viewing the evidence in the light most favorable to that verdict, the evidence is insufficient to support it." *Von Hake v. Thomas*, 705 P.2d 766, 769 (Utah 1985). We will not reverse a jury's verdict if it is supported by "substantial and competent evidence." *Id. See also Cambelt Int'l Corp. v. Dalton*, 745 P.2d 1239, 1242 (Utah 1987).

We conclude that the jury's partnership finding was not erroneous.[1] Wanlass and

---

1. A partnership is defined as "an association of two or more persons to carry on as co-owners a

Ogden worked jointly in a land title business. Wanlass contributed the labor and expertise, Ogden contributed the equipment, the abstractor's license, and the underwriter. Both parties also shared expenses and income.[2] Wanlass kept all the company records and managed the Manti office's daily operations and, although Ogden worked primarily in Richfield, he was always available to provide assistance or answer questions. Other evidence showed that the accounting practices were consistent with accepted partnership accounting procedures.

After reviewing the evidence, the jury concluded that a partnership existed. Our review of the record also suggests that Wanlass and Ogden intended "to carry on as co-owners a business for profit." Utah Code Ann. § 48–1–3 (1989). Thus, we cannot conclude that the jury's verdict was erroneous. *See Nupetco Assoc. v. Jenkins,* 669 P.2d 877, 881–82 (Utah 1983); *Cutler v. Bowen,* 543 P.2d 1349, 1351 (Utah 1975).

## PARTNERSHIP REMEDIES

Although Mrs. Wanlass agrees with the jury's partnership determination, she argues that the Ogden children wrongfully breached the partnership agreement after Ogden's death. Therefore, she claims entitlement to damages separate from those described in the Utah Partnership Act. She asks this court to either remand for trial on the conversion issue, or complete the wind up and enter judgment for 45% of $195,523.43 in favor of Mrs. Wanlass.

### (1) Damages

■ Mrs. Wanlass proceeded at trial on a legal theory asserting the existence of a partnership and agreed to have only that issue determined at trial.[3] Indeed, if no partnership existed the Wanlass estate would have no right to a share of D Land Title property since Wanlass would only be an agent of the company. Thus, once the partnership was found to exist, Mrs. Wanlass was required to look to the Utah Partnership Act for her remedies.

The Partnership Act states that a partnership automatically dissolves upon the death of one of its partners. Utah Code Ann. § 48–1–28(4) (1989). Upon dissolution, the surviving partner, in the absence of an agreement stating otherwise, has the duty to wind up the partnership. *See* Utah Code Ann. § 48–1–34 (1989). The deceased partner's estate is entitled to the deceased partner's share of the partnership ascertained at the date of dissolution, or a share in the continued partnership. Utah Code Ann. §§ 48–1–39, 48–1–40 (right to an account of partner's interest accrues at date of dissolution absent agreement to contrary). When both partners die prior to final wind up and termination, however,

business for profit." Utah Code Ann. § 48–1–3 (1989).

**2.** The parties split income as follows: (1) Foreclosure Reports: Wanlass 60%, Ogden 40%; (2) Document Preparation: Wanlass 100%; and (3) Title Insurance Premiums: Wanlass 50%, Ogden 50%.

**3.** Before trial, counsel for both parties agreed to have the partnership issue decided before consideration of remedies. At the close of evidence, counsel for both sides confirmed this course of action:

MR. JACKSON B. HOWARD: [W]e are simply going to ask the jury was it a partnership or was it not? And they will come back. And when they come back, the Court will determine whether they are entitled to an accounting and Order [sic] them to give us an accounting.
THE COURT: We will have to appoint a receiver for the business.

MR. JACKSON B. HOWARD: Somebody to wind it up, yes. Is that the theory that the Court thinks the law—
THE COURT: —That's the way I see this lawsuit. Have you got something different from that?
MR. JACKSON B. HOWARD: No. I've got a couple of cases. But I didn't want to misunderstand the Court's position. And if the Court wanted me to put on proof of an accounting, I wanted to call these people back and say, "You have never given us an accounting."
THE COURT: Well, we'll get to that after the matter goes beyond where we are.
MR. JACKSON B. HOWARD: Well, I didn't want to be in a position where the Court expected me to prove my damages or losses for the accounting, because I couldn't. That's all I'm asking a recess for. Just to refine our positions.
THE COURT: All right. Mr. Olsen?
MR. OLSEN: That was my understanding, that it would be submitted to the jury on the question of whether or not there was a partnership.

then the estate of the last surviving partner usually completes the wind up. *Sharp v. Sharp,* 54 Utah 262, 272, 180 P. 580, 584 (1919); *see also* 68 C.J.S. *Partnership* § 273 (1950).

Here, Mrs. Wanlass argues that the Partnership Act remedies are inadequate since the accounting and wind up occurred several years after dissolution. This delay allegedly allowed Ogden's children to convert partnership assets. Her argument, however, ignores section 48–1–39 which allows the deceased partner's estate to choose between "the value of his interest at the date of dissolution" or "in lieu of interest, the profits attributable to the use of his right in the property of the dissolved partnership...." Utah Code Ann. § 48–1–39 (1989). The trial judge reviewed section 48–1–39 and appointed a receiver to perform an accounting and submit to the court a proposed plan of distribution.

Mrs. Wanlass objects to this procedure and argues that no fair accounting can be performed even by a court-appointed receiver. We disagree. Section 48–1–39 provides alternative remedies for settling dissolved partnership accounts. When the partnership issue remains unsettled for several years, as it did here, the court has no choice but to retroactively apply section 48–1–39 and other Partnership Act remedies. *See Cornell & Co. v. Pace,* 703 S.W.2d 398, 403 (Tex.Ct.App.1986) (accounting and settlement is a condition precedent to any action for conversion). Those remedies entitle appellant to 45% of any partnership assets. Appellant's objections to distribution of partnership assets and claim for conversion are premature. She must first await the receiver's report and plan of distribution as the trial court concluded in its findings of fact and conclusions of law, and "take exception to the Report ... in writing" before pursuing additional remedies.

**(2) Wrongful dissolution**

■ No wrongful dissolution could occur after Ogden's death since the partnership

was previously dissolved by operation of law.[4] Appellant's reliance on *Jeaness v. Besnilian,* 101 Nev. 536, 706 P.2d 143 (1985), to support her alternative remedy theory is misplaced. In *Jeaness,* one of the partners wrongfully repudiated the partnership agreement by converting assets to his own personal use. The non-breaching partner brought suit. The Nevada Supreme Court ruled that:

> Where a partner *wrongfully repudiates* the partnership and converts the assets of the partnership to his own use and benefit, the excluded partner ... "may waive the tort or breach and sue to specifically enforce the partnership or joint venture agreement, including the remedy of a judicial dissolution and an accounting ... or the victim may submit to the repudiation and sue for damages for breach of the joint venture agreement...."

*Jeaness,* 706 P.2d at 145–46 (quoting *Gherman v. Colburn,* 72 Cal.App.3d 544, 140 Cal.Rptr. 330, 343 (1977) (emphasis added)). *See also* Utah Code Ann. § 48–1–35 (1989) (partner causing wrongful dissolution entitled to "value of his interest in the partnership, less any damages caused to his co-partners by dissolution"). A *Jeaness*-type cause of action does not apply in this case where the partnership was not wrongfully dissolved.

**(3) Valuation Evidence**

■ Mrs. Wanlass alternatively claims that she is "entitled to entry of judgment in accordance with [the value of the partnership on the date of Wanlass's death]." A land title expert testified that the value of the business was $195,523.45 on the date of Wanlass's death.

Mrs. Wanlass argues that this valuation evidence should be converted into a Utah Rule of Civil Procedure 15(b) amendment. Rule 15(b) states that "[w]hen issues not raised by the pleading are tried by express or implied consent of the parties, they shall

---

**4.** Utah Code Ann. § 48–1–28(4) states that "[d]issolution is caused:.... (4) By the death of any partner."

be treated in all respects as if they had been raised in the pleadings." Utah R.Civ.P. 15(b). Here, there was neither expressed nor implied consent to try the valuation issue because the sole issue in dispute was partnership existence. *See supra* note 3. Before trial, both parties agreed that the partnership issue was a condition precedent to consideration of potential damages or other remedies. Furthermore, respondents presented no valuation evidence chiefly because that issue was premature. *See National Farmers Union Prop. & Cas. Co. v. Thompson*, 4 Utah 2d 7, 286 P.2d 249, 253 (1955).

Mrs. Wanlass further contends that the trial court erred in bifurcating the partnership issue from the other issues. We find this argument without merit. Both parties agreed to that procedure before trial since Mrs. Wanlass's potential claims would be moot in the absence of a partnership.

### APPOINTMENT OF A RECEIVER

 Finally, appellant contends that the court-appointed receiver exceeded his authority by allegedly "determining the value of assets of the partnership, determining the value of the services performed for the partnership by the various parties, and performing an accounting." We disagree. The appointment of a receiver is a judicial mechanism for marshaling the assets, paying the partnership's debts, and dividing the remaining monies among the deceased partners' estates. *See Hankin v. Hankin*, 507 Pa. 603, 493 A.2d 675, 677 (1985). Receivers are court appointed officers responsible for preservation of partnership property. Utah R.Civ.P. 66(h); *see also Interlake Co. v. Von Hake*, 697 P.2d 238, 240 (Utah 1985). Here, neither party initiated wind up procedures nor arrived at an agreeable settlement, leaving conflicting claims among the surviving heirs. The trial judge correctly determined this "substantial dispute" prevented either party from performing a fair accounting and wind up. Thus, the trial court, with the initial consent of both parties, appointed the receiver to perform this task. Contrary to Mrs. Wanlass's assertion, this is precisely the situation in which appointment of a receiver is appropriate. Utah R.Civ.P. 66. *See generally* 65 Am.Jur.2d *Receivers* § 43 (2d ed. 1972).

We find the remaining issues raised by the parties without merit. Any remaining issues are adequately addressed by consulting the Utah Partnership Act.

Affirmed.

BENCH and GARFF, JJ., concur.