2008 UT App 173

OLP, LLC, a limited liability company; and Richard Wilson, an individual, Plaintiffs, Appellees, and Cross-appellants,

v.

Wayne BURNINGHAM, an individual; and Optical Lens Products Management, Inc. dba Intermountain Antireflective Coatings, a Utah corporation, Defendants, Appellants, and Cross-appellees.

No. 20060178–CA.

Court of Appeals of Utah.

May 15, 2008.

Stephen K. Christiansen and Lisa B. Bohman, Salt Lake City, for Appellants and Cross-appellees.

Brent O. Hatch, Parker Douglas, and Phillip J. Russell, Salt Lake City, for Appellees and Cross-appellants.

Before GREENWOOD, P.J., THORNE, Associate P.J., and DAVIS, J.

## OPINION

THORNE, Associate Presiding Judge:

¶1 Wayne Burningham and Optical Lens Products Management, Inc. dba Intermountain Antireflective Coatings (IARC), appeal from a judgment in favor of Richard Wilson.[1] We affirm.

## BACKGROUND

¶2 Since 1998, Burningham and Wilson were the sole owners of OLP, LLC (OLP), a limited liability company (LLC) in the business of putting antireflective coatings on eyeglass lenses. By 2001, an ongoing dispute between the two owners over management and profit sharing resulted in this litigation. We briefly review OLP's formation and business structure as it relates to this matter.

¶3 Burningham had been in the lens coating business since 1988, when he formed IARC as a sole corporation. Since its inception, IARC has had as its principal customer Cole Vision (Cole). In 1993, IARC purchased a lens coating machine (Satis 1) that it used to service Cole along with its other, smaller customers.

¶4 Burningham hired Wilson as an IARC employee in 1995. In 1998, Burningham and Wilson formed OLP as a separate lens coating business that was intended to complement IARC. OLP purchased a second lens coating machine (Satis 2) and entered into an operating agreement with IARC whereby both companies would use the Satis 2 and share its operating expenses on a per lens basis. OLP obtained a $573,000 loan to purchase the Satis 2, and both Burningham and Wilson personally guaranteed the loan. Although the two companies each had their own customers, all customers interacted only with, and made payments solely to, IARC. IARC's alleged mishandling of funds attributable to OLP's customers would become a

1. OLP, LLC, was a plaintiff below and is an appellee and cross-appellant before this court, see infra ¶9 n. 5, but the judgment being appealed from is solely in favor of Wilson.

major point of contention between Burningham and Wilson.

¶ 5 When Burningham and Wilson formed OLP, both parties contributed an initial capital investment of $5000, with Burningham's contribution coming in the form of a check from IARC. Per an oral agreement, both parties were to share equal ownership and control of the company, continue to contribute matching capital investments, and equally split profits and losses. No agreement was contemplated or reached as to what would happen if one party contributed greater capital investments than the other.

¶ 6 From 1998 to mid–1999, Wilson contributed an additional $18,500, for a total capital investment in OLP of $23,500. Wilson did not believe that additional capital investment was necessary after that time. From the time of OLP's formation until 2001, IARC transferred approximately $340,000 into OLP's account. These transfers were originally characterized as loans or advances to OLP, but Burningham later characterized them as his capital investments in OLP. The actual nature of the IARC transfers and the effect of the transfers on OLP's ownership and control were disputed between the parties.

¶ 7 During the 1998–2001 time period, differences arose between Burningham and Wilson in their conceptions of how OLP was supposed to function, and did in fact function, in relation to IARC. One particular dispute was whether "new" business from Cole, attributable to the additional capacity of the Satis 2, was to be credited to IARC or to OLP. Wilson became convinced that Burningham was attempting to freeze him out of the business, using the Satis 2 primarily for IARC's use, terminating OLP's accounts, and retaining OLP's profits for himself and IARC. In light of these concerns, Wilson sought an accounting of OLP's business. Burningham and Wilson met in January 2001 to discuss a formal LLC accounting, but no such accounting ever occurred.

¶ 8 Further negotiations between Burningham and Wilson, and their respective accountants, failed to resolve the dispute, and Wilson filed suit in district court in August 2001. Wilson's original complaint, filed on behalf of himself and OLP, alleged various causes of action against Burningham and IARC, including repudiation, breach of contract, breach of fiduciary duty, and breach of the covenant of good faith and fair dealing.[2] Wilson sought damages, declaratory relief establishing his rights in OLP, and a formal accounting of OLP's business.[3] Burningham asserted various affirmative defenses and counterclaimed seeking declaratory relief, damages for breach of contract, and dissolution of OLP pursuant to Utah's Revised Limited Liability Company Act (the LLC Act), *see* Utah Code Ann. §§ 48–2c–101 to–1902 (2007). Wilson subsequently amended his complaint to add a claim for tortious interference with prospective economic advantage. *See generally Anderson Dev. Co. v. Tobias,* 2005 UT 36, ¶ 20, 116 P.3d 323 (outlining tort of intentional interference with economic relations).

¶ 9 Throughout the course of the litigation, Burningham attempted to have the dispute resolved through application of the LLC Act and sought a judicial dissolution, accounting, and winding up of OLP's business pursuant to the LLC Act. The district court eventually agreed that OLP had been effectively dissolved through the parties' inability to cooperate in the management and operation of the company. The district court determined the date of this dissolution to be no later than August 31, 2001, the date of Burningham's answer to Wilson's complaint. However, rather than proceed with dissolution proceedings under the LLC Act, the district court determined that there was an initial factual question as to whether Burningham owed Wilson damages for repudiating the parties' agreement. Characterizing the issue as one of wrongful dissolution,[4] the district court stated:

2. Hereinafter, unless otherwise required by the context, we refer to the appellants collectively as Burningham, and the appellees collectively as Wilson.

3. Wilson's original and amended complaints, and Burningham's answers thereto, contain other claims and factual allegations not directly related to this appeal, and we therefore do not address them here.

4. Wilson's repudiation claim, upon which he ultimately prevailed, is the central focus of this appeal. We note that over the course of the

I'm determining that it's a jury question whether there was a wrongful dissolution chargeable to Mr. Burningham and that the elements that have to be set forth and addressed in the verdict form are exclusion, repudiation and conversion of the assets of [OLP] and the determination of the damages will be dictated to a large extent by what the jury determines. If they determine a wrongful dissolution, they can address full expectation including lost profit clear through trial. If they do not determine wrongful dissolution, lost profits are cut off as of August 31, 2001 and you need to put that in specifically and we reserve the remaining issues for the Court thereafter.

The special verdict form given to the jury asked whether "Burningham wrongfully dissolved [OLP] by repudiating his agreement with Wilson regarding the operation of [OLP] and by converting the assets of [OLP] for Burningham's own benefit and use and to the exclusion of Wilson." The jury answered this question in the affirmative and awarded damages in excess of $1,200,000. Burningham appeals.[5]

## ISSUES AND STANDARDS OF REVIEW

¶ 10 Burningham first argues that the district court failed to properly apply various provisions of the LLC Act to Wilson's claims. " 'The proper interpretation and application of a statute is a question of law which we review for correctness, affording no deference to the district court's legal conclusion.' " *Ellison v. Stam*, 2006 UT App 150, ¶ 16, 136 P.3d 1242 (quoting *Gutierrez v. Medley*, 972 P.2d 913, 914–15 (Utah 1998)).

litigation both the district court and the parties began referring to the repudiation claim as one for wrongful dissolution of OLP. The parties' nomenclature is understandable in light of the undisputed breakdown of the parties' own business relationship and the repudiation cause of action's origins in the partnership context. *See Wanlass v. D Land Title*, 790 P.2d 568, 572 (Utah Ct.App.1990) (analyzing repudiation in terms of the wrongful dissolution of a partnership). However, in the LLC context, referring to repudiation as a claim for wrongful dissolution is inaccurate for reasons that we will discuss in the analysis section of this opinion. We accordingly refer to Wilson's successful claim under *Wanlass v. D Land Title*, 790 P.2d 568 (Utah Ct.App.1990), as a claim for repudiation, rather than one for wrongful dissolution.

¶ 11 Burningham next asserts that the district court denied him the right to assert various equitable defenses. "[W]e review [the] use of equitable remedies under an abuse of discretion standard." *Myrah v. Campbell*, 2007 UT App 168, ¶ 25, 163 P.3d 679. However, to the extent that Burningham's arguments present questions of law, we review the district court's actions for correctness. *See Mardanlou v. Ghaffarian*, 2006 UT App 165, ¶¶ 8–9, 135 P.3d 904, *cert. denied*, 150 P.3d 58 (Utah 2006).

¶ 12 Finally, Burningham raises various challenges to the district court's presentation of the case to the jury, including an assertion that no action for wrongful dissolution will lie when the existence of an LLC is not in dispute; challenges to the district court's jury instructions; and an assertion of error that the district court allowed OLP to be presented as a "going concern" at trial. These issues present questions of law that we review for correctness. *See id.*

## ANALYSIS

¶ 13 Burningham raises various issues on appeal, the bulk of which directly or indirectly challenge the district court's decision allowing Wilson's claim for repudiation damages to proceed outside the strictures of the LLC Act. We determine that a cause of action for money damages for repudiation of an LLC does exist independently from the LLC Act and analyze Burningham's arguments accordingly.

5. Wilson also cross-appeals the district court's decision vacating the portion of the jury verdict that found a breach of contract by IARC against OLP. However, the cross-appeal is expressly conditioned on Burningham obtaining relief in his appeal. Because we affirm the district court, we do not address Wilson's cross-appeal. We do note that, in light of the jury's determination that Wilson has been excluded from OLP, there is some question as to whether Wilson, acting individually, may even prosecute a cross-appeal on OLP's behalf at this point. Due to the conditional nature of the cross-appeal, however, we need not address this question either.

### I. The District Court Properly Applied the LLC Act

¶ 14 The central focus of Burningham's appeal is that the district court erred in allowing Wilson to pursue a claim for repudiation of an LLC agreement despite the enactment of the LLC Act. Burningham argues that the LLC Act is a comprehensive act governing all aspects of LLC formation, existence, and dissolution, and that as such it abrogates any preexisting common law action for repudiation. Accordingly, Burningham argues, the trial court erred when it failed to follow various provisions of the LLC Act. The district court's alleged errors include failing to calculate the members' capital accounts, *see* Utah Code Ann. §§ 48–2c–102(3), –903, –906, –1003, –1308 (2007); allowing Wilson's repudiation claim to proceed despite the district court's proper judicial dissolution of OLP under the LLC Act, *see id.* §§ 48–2c–1201, –1213; and declining to provide a judicially supervised windup and termination as required under the LLC Act, *see id.* § 48–2c–1301.

¶ 15 We do not disagree with Burningham's characterization of the LLC Act as comprehensive, nor with his assertion that—in the absence of contractual provisions to the contrary—the LLC Act provides the exclusive procedures for the dissolution of an LLC in most circumstances. However, the district court relied on *Wanlass v. D Land Title,* 790 P.2d 568 (Utah Ct.App.1990), to conclude that a cause of action for repudiation of an LLC agreement exists outside of the LLC Act. The *Wanlass* court, quoting the Nevada Supreme Court, stated:

> "Where a partner *wrongfully repudiates* the partnership and converts the assets of the partnership to his own use and benefit, the excluded partner may waive the tort or breach[6] and sue to specifically enforce the partnership or joint venture agreement, including the remedy of a judicial dissolution and an accounting[,] or the victim may submit to the repudiation and sue for dam-

ages for breach of the joint venture agreement."

*Id.* at 572 (omissions and internal quotation marks omitted) (quoting *Jeaness v. Besnilian,* 101 Nev. 536, 706 P.2d 143, 145–46 (1985) (per curiam)); *see also Gherman v. Colburn,* 72 Cal.App.3d 544, 140 Cal.Rptr. 330, 343 (1977). The district court allowed Wilson to pursue a *Wanlass* action for Burningham's repudiation of the parties' LLC agreement, notwithstanding the distinction that *Wanlass* addressed partnership law whereas OLP was an LLC governed by the LLC Act.

▪ ¶ 16 We agree with the district court that *Wanlass* describes a cause of action that is available to LLC members under Utah law despite the enactment of the LLC Act. Absent a direct conflict with the provisions of the LLC Act, we see no reason why an LLC member or members should not be able to sue for damages when the other member or members wrongfully repudiate the LLC agreement and convert the LLC's assets to their own use. Although Burningham argues that such a cause of action *does* present a conflict with the LLC Act, we consider and reject each of his arguments under the facts and circumstances of this case.

### A. The jury properly resolved the factual issue of Wilson and Burningham's ownership and control of OLP

▪ ¶ 17 Burningham first argues that the district court ignored the LLC Act's provisions concerning capital accounts and deprived him of his entitlement to a calculation of those accounts and, thereby, a proper determination of the parties' respective ownership shares of OLP. While we agree with Burningham's assessment of the LLC Act as it pertains to capital accounts, we do not see those provisions as inconsistent with a cause of action for repudiation. Further, the jury in this case apparently rejected Burningham's allegations that he had contributed substantially greater funding to OLP than

---

6. The parties do not brief or argue whether Wilson's repudiation claim is one of tort, breach of contract, or both. We see no obvious meaningful difference under the facts of this case, and we do not address the issue. *See Gherman v. Colburn,* 72 Cal.App.3d 544, 140 Cal.Rptr. 330, 342 (1977) ("[W]e see very little, if any, practical distinction

between the measure of damages in an action [for repudiation sounding in tort] and an action [for repudiation sounding in contract]."). Nevertheless, we do not foreclose the possibility that the distinction between tort and contract might be meaningful in some future repudiation case.

had Wilson, and, instead, adopted Wilson's version of events whereby Wilson was at least a fifty-percent owner of OLP. Thus, the jury's verdict considered the dispute between the parties as to the ownership percentages of OLP and resolved that dispute in Wilson's favor.

¶ 18 Under the LLC Act, members of an LLC are allowed great flexibility when choosing how the LLC will be organized and managed. *See* Utah Code Ann. §§ 48–2c–403(4) ("[An LLC's] articles of organization may contain any other provision not inconsistent with law. . . ."), –1901 (2007) ("It is the intent of the Legislature that this chapter be interpreted so as to give the maximum effect to the principle of freedom of contract and to the enforceability of operating agreements of companies."). However, the provisions of the LLC Act serve as default positions that govern an LLC if its members do not include contrary language in their operating agreement or in the LLC's articles of organization. The parties here did not incorporate any such changes in OLP's governing documents, and thus, the LLC Act provides the appropriate procedures for determining, among other things, Wilson and Burningham's respective ownership interests in OLP.

¶ 19 The LLC Act provides that an LLC shall maintain a capital account for each member, representing that member's share of the net assets of the company. *See id.* § 48–2c–903(1). A member's capital account reflects the member's initial contribution and is then adjusted upwards or downwards based on the member's additional contributions and on certain distributions to the member. *See id.* A member's voting rights, rights to share in profits, and ownership interest in the LLC are all measured in proportion to the member's capital account. *See id.; see also id.* §§ 48–2c–803 (determining required voting majorities for member-managed LLCs in terms of profit interests), –906 (allocating profit interests between members in proportion to their capital accounts).

¶ 20 In light of these default provisions, adopted by the parties when they failed to contractually vary them, Burningham argues that the district court prejudiced his rights by failing to resolve the capital accounts issue as a question of law. We disagree.

While the application of the LLC Act to a particular set of facts may well represent a question of law, the facts in this case were hotly disputed. Under Wilson's version of events, which the jury apparently adopted, Wilson and Burningham formed OLP with equal ownership rights and Wilson contributed further capital while Burningham only loaned money to OLP though IARC. Under this set of facts, Wilson's ownership interest in OLP would actually have exceeded Burningham's by the time Burningham excluded Wilson from the company.

¶ 21 Because the question of capital contributions to OLP was a factual one, it was appropriate for the jury to determine the parties' ownership interests in OLP. Burningham has not convinced us that the jury's verdict resulted from misapplication of the law rather than from its determination of factual issues in Wilson's favor and against Burningham. Accordingly, we will not disturb the jury's verdict for lack of a district court determination of the parties' capital accounts.

### B. The August 31, 2001 judicial dissolution

¶ 22 Burningham next argues that there can be no wrongful dissolution of an LLC when the LLC is rightfully dissolved pursuant to the LLC Act. Burningham characterizes the district court's order determining OLP to have been dissolved no later than August 31, 2001, to be such a rightful dissolution, *see* Utah Code Ann. §§ 48–2c–1201(6), –1213 (2007), and argues that the district court's dissolution of OLP defeats Wilson's repudiation claim as a matter of law. We disagree because, in the LLC context, Wilson's claim for repudiation is not a claim seeking dissolution but rather one for damages arising from Burningham's exclusion of Wilson from OLP and conversion of OLP's assets to his own use.

¶ 23 We first note that it is by no means clear that the district court's order determining the August 31, 2001 dissolution date of OLP was intended to be a formal order of dissolution under the LLC Act. The LLC Act provides that an LLC "shall be dissolved upon the occurrence of any of the following events," one of which is the "entry of a

decree of judicial dissolution under [Utah Code] Section 48–2c–1213." *Id.* § 48–2c–1201(6). Utah Code section 48–2c–1213 contains multiple formalities that were not observed here, including the necessity of a hearing, the entry of a written decree of dissolution, and delivery of a certified copy of the decree from the clerk of the court to the Division of Corporations and Commercial Code of the Utah Department of Commerce. *See id.* § 48–2c–1213. Further, in the context of the ongoing litigation, the purpose of the district court's order does not appear to have been to formally dissolve OLP, but rather to establish a cutoff date for Wilson's lost profit damages if the jury found that Burningham had breached the parties' agreement but had not done so in such a matter as to constitute a repudiation of the agreement.

■ ¶ 24 Even if we were to treat the district court's order as dissolving OLP as an LLC in 2001, Burningham provides us with no persuasive reason why that dissolution would impair the jury's ability to award Wilson repudiation damages in this case. A repudiation claim is not a claim for dissolution of a company, but, rather, a claim for damages. *See Wanlass v. D Land Title,* 790 P.2d 568, 572 (Utah Ct.App.1990) (distinguishing judicial dissolution and accounting from repudiation damages as alternate remedies available to an excluded partner). It is also an exception to the general rule that partners may not sue each other prior to dissolution of their company under the governing act. *See Gherman v. Colburn,* 72 Cal.App.3d 544, 140 Cal.Rptr. 330, 338–39 (1977). Thus, although the district court and the parties below referred to Wilson's repudiation claim as one for wrongful dissolution, it is merely an action for damages between business partners, arising from circumstances that will often, but not always, also support dissolution of the LLC.[7]

¶ 25 Burningham cites *Wanlass* in support of his argument, but his reliance thereon is misplaced. *Wanlass* did hold that there can be no action for wrongful dissolution or repudiation based on events occurring after a company has been rightfully dissolved. *See* 790 P.2d at 572 ("No wrongful dissolution could occur after Ogden's death since the partnership was previously dissolved by operation of law."). But this is not the same as saying that once a dissolution occurs, a jury may not consider a claim of repudiation arising *before* the dissolution event. We view *Wanlass's* holding in this regard to be a common-sense statement that one cannot repudiate or wrongfully dissolve a company that no longer exists. The clear implication of this holding is that once a partner is wrongfully excluded from his or her company, the excluded partner may bring an action for repudiation damages even if the company is subsequently legally dissolved.

■ ¶ 26 Burningham also points to express wrongful dissolution provisions that are present in Utah's general partnership statutes but absent from the LLC Act.[8] *See* Utah Code Ann. §§ 48–1–28(2), –34, –35(2) (2007). Burningham argues that the legislature's differing treatment of the two types of organizational structures evidences an intent to foreclose wrongful dissolution actions in the LLC context. We agree with Burningham to a certain extent—it does not appear that the legislature intended to allow LLC members to unilaterally dissolve an LLC in contravention of the parties' agreements in the same way that partners in a partnership can. *See id.* § 48–1–28(2) ("Dissolution [of a partnership] is caused ... [i]n contravention of the agreement between the partners ... by the express will of any partner at any time."). However, dissolution and damages are two separate legal concepts, and it is not unrea-

---

7. We see no reason to reach the question of whether a successful repudiation claim must necessarily entail the dissolution of the LLC as of the date of the judgment or otherwise, particularly where there may be more than one member remaining in the LLC.

8. Burningham also points out that the unadopted Uniform Limited Liability Company Act contains wrongful dissociation provisions that closely model those found in Utah's partnership statutes.

*See* Uniform Limited Liability Company Act § 602, 6A U.L.A. 610 (1996). Burningham asserts that the legislature's failure to adopt the uniform act constitutes a rejection of its wrongful dissociation provisions. While we agree that the legislature's changes when adopting a model code are presumed to be intentional, *see State v. Casey,* 2003 UT 55, ¶ 29, 82 P.3d 1106, we draw no such intent from the legislature's failure to adopt a particular model code.

sonable for the legislature to have made the LLC form more difficult to dissolve while still allowing wrongfully excluded members to seek money damages.

¶ 27 We ultimately see no conflict between Wilson's repudiation claim and the district court's purported dissolution of OLP in August 2001. Burningham's argument that a dissolution cannot be wrongful if it is rightful presumes that a successful repudiation claim necessarily establishes the *rightful* dissolution of the underlying LLC, a presumption that we reject. The jury in this case decided that Wilson had been *wrongfully* excluded from OLP prior to any dissolution by the district court and properly awarded Wilson damages without regard to any subsequent dissolution of OLP by Burningham or the court.

### C. Wind up and liquidation

¶ 28 Burningham also argues that the district court should have conducted a winding up of OLP pursuant to the LLC Act. This argument also assumes that a judicial dissolution of OLP for purposes of the LLC Act actually occurred, an assumption that we question. *See supra* ¶ 23. Nevertheless, assuming without deciding that OLP was judicially dissolved, we see no error in the district court's failure to conduct its own winding up and liquidation of OLP.

¶ 29 Burningham properly asserts that the dissolution of an LLC is ordinarily followed by winding up and liquidation, whereby the company's accounts are settled and its assets distributed to its members according to their ownership interests. *See* Utah Code Ann. § 48–2c–1301 (2007). However, we think Burningham goes too far when he argues, under these circumstances, that "[t]he district court had a statutory obligation to conduct [a] windup once it ordered

dissolution." The LLC Act in fact grants considerable discretion to courts handling dissolved LLCs, and the district court here appears to have acted within the bounds of that discretion.

¶ 30 In cases of judicial dissolution, the LLC Act directs that "[a]fter entering the decree of dissolution, the court shall direct the winding up and liquidation of the company's business and affairs in accordance with Part 13 [of the LLC Act]." *Id.* § 48–2c–1213(2). Pursuant to part 13 of the LLC Act, the winding up of a member-managed company is ordinarily performed by the members themselves absent the district court's appointment of a receiver or custodian. *See id.* § 48–2c–1303(1)(b). Although the district court certainly has the authority to wind up an LLC itself, *see id.* § 48–2c–1211(3), or to appoint a receiver to perform the winding up, *see id.* § 48–2c–1212, we see nothing in the LLC Act that precludes the district court from allowing an LLC's members to perform the winding up pursuant to section 48–2c–1303 in appropriate circumstances.

¶ 31 In this case, OLP had only two members, Wilson and Burningham. As a practical matter, after the judgment in favor of Wilson, Burningham remained as the member or former member [9] most ably situated to perform OLP's winding up. The jury, after all, decided that Burningham had excluded Wilson from OLP and converted its assets to his personal use. In these circumstances, it would seem appropriate for the district court to simply allow Burningham to wind up OLP, particularly since the wind up request came from Burningham himself.[10] While the district court perhaps failed to comply with the statute when it did not expressly "direct" Burningham to do so, *see id.* § 48–2c–

---

9. It would exceed the scope of this case for us to decide the effect of a successful repudiation claim on the membership and ownership status of an LLC's various members. For purposes of this case, we agree with the district court that Wilson disclaimed any continuing interest or membership in OLP by rejecting equitable proceedings and obtaining a money judgment against Burningham.

10. We recognize that Burningham was seeking a winding up of OLP primarily for the purpose of

overturning the jury's verdict by obtaining a more favorable determination of his and Wilson's respective ownership interests of OLP. No matter who ultimately performed the winding up, the jury's verdict would ultimately control on this issue. *See supra* ¶¶ 17–21; *see also Zions First Nat'l Bank v. Rocky Mountain Irrigation, Inc.,* 795 P.2d 658, 662 (Utah 1990) (holding that a jury's factual determinations will bind a trial court in its subsequent consideration of equitable issues).

1213(2), we see no prejudice to Burningham or reason to disturb the proceedings below.

## II. Burningham Was Not Deprived of Equitable Claims and Defenses

¶ 32 Burningham's next set of arguments pertains to alleged errors by the district court affecting Burningham's presentation of claimed equitable defenses. Specifically, Burningham argues that he was entitled to a detailed accounting under the LLC Act; that such an accounting should have been completed prior to the jury's consideration of Wilson's legal claims; and that the district court deprived Burningham of a fair trial by changing its rulings over the course of the litigation and failing to establish a set procedure for litigating Wilson's claims. We see no error here.

¶ 33 Wilson's claimed entitlement to an accounting suffers from the same infirmity as his other claims for application of the LLC Act. As we addressed earlier in this opinion, a claim for repudiation of an LLC is not a claim for dissolution of the LLC, wrongful or otherwise. *See supra* ¶ 24. And, the jury's resolution of Wilson's repudiation claim necessarily resolved the ownership interest question in Wilson's favor. In light of our recognition of the repudiation claim in the LLC context, the jury's verdict reflects a series of factual determinations, each of which was entirely within the jury's province to make.

■■■ ¶ 34 We also disagree with Burningham's assertion that resolution of his equitable claims should have been accomplished prior to the jury's consideration of any of Wilson's legal claims. A repudiation claim is an exception to the general rule that dissolution and accounting must occur prior to an action between partners. *See Wanlass v. D Land Title,* 790 P.2d 568, 572 (Utah Ct.App. 1990); *see also Gherman v. Colburn,* 72 Cal. App.3d 544, 140 Cal.Rptr. 330, 338 (1977) ("[A]n action for judicial dissolution and accounting is not the only permissible action between partners. There is at least one important exception: where one partner ex-cludes the other, repudiates the very existence of the partnership and converts all of the partnership assets."). As such, "when legal and equitable issues turn on the same operative facts, a jury must decide the legal issue first[, and] the jury's factual determination binds the trial court in its determination of the parallel equitable issue." *Zions First Nat'l Bank v. Rocky Mountain Irrigation, Inc.,* 795 P.2d 658, 662 (Utah 1990). Here, the jury properly first considered the legal claim that Burningham had repudiated his agreement with Wilson, even though that claim turned on the same operative facts as Burningham's alleged equitable defenses. *See id.*

■■■ ¶ 35 Finally, we disagree with Burningham's assertion that the district court treated him unfairly by failing to lay out a set and consistent procedure for adjudicating Wilson's claims. While this case may have evolved somewhat over time, it was clear well before trial that Wilson was asserting a legal claim that Burningham had wrongfully ex-cluded him from OLP and converted OLP's assets to his personal use. Burningham's good faith belief and argument that this claim was precluded by the LLC Act, for all of the reasons asserted in his appeal, did not excuse him from defending against the claim in the district court. And there is no real suggestion that Burningham did not ade-quately defend the claim—he presented sub-stantial evidence to the jury in support of his assertion that he had obtained nearly com-plete ownership and control of OLP by con-tributing more capital than Wilson. The jury's rejection of these arguments does not equate to any unfairness to Burningham, and we see no error in the district court's han-dling of this difficult and contentious mat-ter.[11]

## III. Burningham's Other Claims Are Without Merit

¶ 36 Burningham raises three final issues under the general assertion that the district

---

11. It is perhaps worth noting that the California Court of Appeals described the arguments in a similar case—arising solely under partnership law, and thus without the added difficulty of considering the LLC Act—as a "quagmire of eru-dite, esoteric quicksand." *Gherman,* 140 Cal. Rptr. at 337. The trial judge's efforts in negotiat-ing such a quagmire in the present case are to be commended.

court wrongfully tried the legal case before it. Burningham argues that a claim for repudiation of an LLC agreement will not lie when the existence of the LLC is not in dispute; that the district court incorrectly instructed the jury on wrongful dissolution and material breach; and that the district court erred in allowing OLP to be presented at trial as a "going concern." We reject each of these arguments in turn.

## A. Continuing existence of OLP irrelevant to Wilson's repudiation claim

■■ ¶ 37 Burningham argues that the repudiation claim described in *Wanlass v. D Land Title,* 790 P.2d 568 (Utah Ct.App.1990), will not lie where the existence of the LLC is not in dispute. Because both Wilson and Burningham acknowledged the existence of OLP, Burningham argues that a repudiation claim is not proper here. In support of this argument, Burningham relies primarily on two cases, *Gherman v. Colburn,* 72 Cal. App.3d 544, 140 Cal.Rptr. 330 (1977), and *Mardanlou v. Ghaffarian,* 2006 UT App 165, 135 P.3d 904, *cert. denied,* 150 P.3d 58 (Utah 2006).

¶ 38 *Gherman* expressly addresses this issue and provides some support for Burningham's argument. The *Gherman* court distinguished partnership repudiation "from a situation in which the guilty party recognizes the existence of a partnership but breaches some obligation in the performance of the partnership agreement not amounting to wrongful dissolution in contravention of the agreement." 140 Cal.Rptr. at 339. The court also stated that repudiation, in contrast to mere breach, is "a denial of the very existence of a partnership or joint venture relationship *in any form or at any time* and a conversion of the partnership assets." *Id.* at 343 (emphasis added). Thus, if we were to import *Gherman* directly into Utah LLC law, Burningham would appear to be correct that the parties' mutual acknowledgment of OLP's existence would preclude a repudiation claim.

¶ 39 We agree generally with *Gherman's* emphasis on distinguishing repudiation from

mere breach. However, we do not see the wisdom in limiting repudiation claims to situations in which the repudiating party denies that the parties' business organization, be it partnership or LLC, ever existed. As a matter of policy, such a rule would place the viability of an injured party's legal claim within the control of the alleged guilty party, who could avoid the claim merely by acknowledging the existence of some agreement at some time. And as a matter of legal authority, this court relied only secondarily on *Gherman* when it acknowledged a repudiation cause of action. *See Wanlass,* 790 P.2d at 572. The primary source of authority was *Jeaness v. Besnilian,* 101 Nev. 536, 706 P.2d 143 (1985) (per curiam), in which the Nevada Supreme Court allowed repudiation damages in a case where both parties acknowledged the existence of their partnership.[12] *See id.* at 144–45; *see also Wanlass,* 790 P.2d at 572 (quoting *Jeaness* ). For these reasons, we decline to adopt the *Gherman* rule.

¶ 40 Burningham also seeks support from *Mardanlou,* but *Mardanlou* did not address repudiation claims. In *Mardanlou,* the plaintiff claimed the existence of a partnership that the defendant denied. *See* 2006 UT App 165, ¶¶ 1–8, 135 P.3d 904. The plaintiff sued, established the existence of the partnership, and was awarded dissolution damages. *See id.* ¶¶ 6–7, 22–24. We affirmed that judgment. *See id.* ¶ 25. Had *Mardanlou* been a repudiation case, its facts would have satisfied the rule urged by Burningham requiring a dispute as to the existence of the partnership. But we see nothing in *Mardanlou* to suggest that a dispute over the existence of a company is a prerequisite to a separate type of claim that the case did not address.

■■ ¶ 41 Neither case cited by Burningham convinces us to adopt a rule whereby the existence of an LLC must be disputed before a repudiation claim will lie. Rather, the existence of a repudiation claim turns on the actions of the offending member meeting the elements of *Wanlass*—repudiation, exclusion, and conversion. *See* 790 P.2d at 572.

12. *Wanlass* rejected the plaintiff's repudiation theory on other grounds and did not consider this issue. *See* 790 P.2d at 572. Nevertheless, we note that the partnership in *Wanlass* appears to have been undisputed. *See id.* at 570.

Here, the jury found those elements and therefore appropriately awarded repudiation damages.

### B. No error in jury instructions

¶ 42 Burningham raises two challenges relating to jury instructions. First, he argues that the district court misinstructed the jury on Wilson's repudiation claim. Second, he argues that the district court allegedly erred when it failed to give a requested instruction on Burningham's material breach defense. Burningham's arguments fail to persuade us of any error in the district court's jury instructions.

¶ 43 The district court instructed the jury that Wilson's claim required a repudiation of the LLC agreement by Burningham. The district court also defined repudiation: "A party repudiates a contract when that party does or says anything indicating that he does not intend to perform the contract. Repudiation is not the mere breach of the contract or some of its terms." This definition of repudiation appears to be consistent with our prior case law. *See, e.g., Scott v. Majors,* 1999 UT App 139, ¶ 15, 980 P.2d 214 (holding that a statement that a party will not perform unless the other party modifies a contract is a repudiation " 'because the breach that he threatens ... is a complete refusal of performance' " (omission in original) (citation omitted)).

¶ 44 Nevertheless, Burningham argues that repudiation has a more specific meaning in this context. Relying on *Mardanlou v. Ghaffarian,* 2006 UT App 165, 135 P.3d 904, *cert. denied,* 150 P.3d 58 (Utah 2006), and *Gherman v. Colburn,* 72 Cal.App.3d 544, 140 Cal.Rptr. 330 (1977), Burningham asserts that repudiation "requires that the partner or member of a company such as the LLC actually deny the existence of the LLC." For the reasons expressed above, we do not read these cases as imposing the narrow definition of repudiation urged by Burningham. *See supra* ¶¶ 37–41. Accordingly, we see no error in the instruction as given.

¶ 45 Burningham also argues that the district court erred by failing to instruct the jury on Wilson's alleged material breach of his contract obligations. According to Burningham, Wilson materially breached the parties' agreement by failing to continue to contribute capital to OLP. Burningham offered several proposed instructions specifically addressed to defining material breach, but the district court rejected them as confusing and misstating the law under the circumstances.

¶ 46 We see no error in the instructions on material breach that were actually given by the district court. The district court instructed the jury that Burningham was asserting a material breach defense and provided a lengthy definition to guide the jury in determining when a breach was material. While jury instructions can always be made more detailed, we do not agree with Burningham that the instructions as given in this case deprived him of his material breach defense. Indeed, Burningham was given extensive opportunity to present his version of the facts to the jury and to argue the legal effect of those facts. We see no reasonable likelihood that the jury's verdict resulted from inadequate instruction on the material breach issue rather than from a determination of the underlying factual claims in Wilson's favor. *See Haupt v. Heaps,* 2005 UT App 436, ¶ 38, 131 P.3d 252 (requiring appellants challenging jury instructions to demonstrate both error in the instructions and a reasonable likelihood that the error affected the result).

### C. No error in presenting OLP as a going concern

¶ 47 Burningham's final argument is that the district court erred in allowing the jury to consider OLP as a going concern despite the district court's order dissolving OLP and despite Burningham's continued requests for dissolution and Wilson's opposition thereto. We see no error here.

¶ 48 Burningham argues that the district court judicially dissolved OLP as of August 31, 2001, and that after dissolution an LLC "may not carry on any business or activities except as appropriate to wind up and liquidate its business and affairs." Utah Code Ann. § 48–2c–1203(1) (2007). As we have discussed above, the district court may or may not have actually dissolved OLP. *See supra* ¶ 23. However, assuming that the order was effective to dissolve OLP as of Au-

gust 31, 2001, the order was not actually entered until the time of trial in November 2004. Thus, it cannot be said that OLP's continued business operation after August 31, 2001, was in violation of the statute. Even if OLP's continued operation did conflict with the statute, it is undisputed that its continued operation did in fact occur. And, in light of the jury's determination that Burningham had wrongfully ousted Wilson from OLP, any violation of the statute occasioned by that continued operation would seem to be attributable to Burningham rather than Wilson or the district court.

 ¶ 49 Burningham also argues that any repudiation claim recognized in *Wanlass* is incompatible with and exclusive from the remedy of judicial dissolution and accounting, and that a plaintiff must choose to pursue only one of these remedies. *See Wanlass v. D Land Title*, 790 P.2d 568, 572 (Utah Ct. App.1990) (stating that an excluded partner may seek a judicial dissolution and accounting *or* may submit to the repudiation and sue for damages). Although we agree with Burningham that *Wanlass* seems to state the remedies in the alternative, Utah law permits a plaintiff to plead alternative theories of relief. *See* Utah R. Civ. P. 8(a) ("Relief in the alternative or of several different types may be demanded."). We also note that *Gherman*, the California case that is ultimately the source of the *Wanlass* language, specifically explained that wrongful dissolution and judicial dissolution and accounting are cumulative remedies and that a plaintiff may elect to pursue either or both. *See*

*Gherman v. Colburn*, 72 Cal.App.3d 544, 140 Cal.Rptr. 330, 343–44 (1977).

¶ 50 In any event, Burningham fails to identify how he was prejudiced by the district court allowing the jury to consider OLP as a going concern. For these reasons, we see no error in the jury's consideration of OLP as a going concern at the time of trial.

CONCLUSION

¶ 51 We conclude that Burningham has failed to identify error in the proceedings below. The district court properly allowed the jury to consider Wilson's common law action for repudiation despite the enactment of the LLC Act. Because the jury found that Burningham repudiated his agreement with Wilson, excluded Wilson from OLP, and converted OLP's assets to his own benefit, a determination of legal damages was appropriate without the accounting and other remedies that would ordinarily be available to Burningham under the LLC Act. We also see no error in the district court's instructions to the jury or in the other actions of the district court challenged by Burningham. Accordingly, we affirm the judgment of the district court.

WE CONCUR: PAMELA T. GREENWOOD, Presiding Judge and JAMES Z. DAVIS, Judge.