2009 UT 75

**OLP, L.L.C. and Richard Wilson,
Plaintiffs and Respondents,**

v.

**Wayne BURNINGHAM and Optical Lens
Products Management, Inc. dba Inter-
mountain Antireflective Coatings, De-
fendants and Petitioners.**

No. 20080517.

Supreme Court of Utah.

Dec. 4, 2009.

Brent O. Hatch, T. Parker Douglas, Phillip J. Russell, Salt Lake City, for plaintiffs.

Stephen K. Christiansen, Lisa B. Bohman, Salt Lake City, for defendants.

DURHAM, Chief Justice:

## INTRODUCTION

¶ 1 Under the Utah Revised Limited Liability Company Act (the LLC Act), a member may file to dissolve a limited liability company by alleging a management deadlock, illegal or oppressive acts by the controlling members, wasted assets, or that it is no longer reasonably practical to carry on the business. Utah Code Ann. § 48–2c–1210(2) (2007). The LLC Act, however, is not the only remedy available to disputing limited liability company members; a party may also seek damages for common law claims. In this case, defendant Wayne Burningham argues that even if a member seeks legal remedies outside of the LLC Act, the damage

award must be determined using the LLC Act's ownership allocation provisions. We disagree and affirm the court of appeals' affirmance of a verdict awarding Richard Wilson damages and finding the defendant liable for repudiating the parties' agreement to work together in a limited liability company with each party as a fifty percent owner. We also affirm the court of appeals' determination that factual issues that underlie both legal and equitable claims were properly determined by the jury.

## BACKGROUND

¶ 2 Defendant Wayne Burningham sought certiorari review of the court of appeals' decision to affirm a jury verdict and a $1.2 million award of damages against him for repudiating his agreement with Richard Wilson to equally own and operate OLP, LLC. The facts of the case are recounted at length in the court of appeals' opinion. *See OLP, LLC v. Burningham*, 2008 UT App 173, ¶¶ 2–9, 185 P.3d 1138. Therefore, we rehearse only those facts relevant to the questions presented to this court.

¶ 3 Richard Wilson and Wayne Burningham formed OLP, LLC to purchase and operate an anti-reflective optical lens coating machine. When creating OLP, Burningham and Wilson contributed equal cash amounts and orally agreed to share equal control and ownership of OLP and consequently share the company's profits and losses. As reflected in OLP's operating agreement, Wilson and Burningham also agreed that Intermountain Coatings, a company owned by Burningham, would use the lens coating machine. The operating agreement did not address the internal operations of OLP.

¶ 4 Not long after OLP's lens coating machine became operational, the parties began to disagree about how clients and the accompanying profits should be divided between OLP and Intermountain Coatings. As it became apparent that Wilson and Burningham could no longer function as business partners, the two parties also began to dispute how to divide ownership interests, and as part of that disagreement, whether to classify additional money Intermountain Coatings had provided to OLP as a loan or as a contribution by Burningham.

¶ 5 After failed efforts at reconciliation, in August 2001, Wilson filed suit against Burningham and Intermountain Coatings (collectively, the Defendants) seeking legal and equitable remedies for breach of fiduciary duty, repudiation, breach of contract, and other contract-related claims. Wilson also sought an accounting of OLP's expenses, revenues, profits, and losses. The Defendants alleged various affirmative defenses in response and asserted a counterclaim for dissolution alleging that the members were deadlocked in the management of the company. Further, Burningham argued that, in the wind up, the members' ownership interests should be determined and distributed according to the balance of each member's capital account as provided for in the LLC Act because the company's operating agreement did not address ownership.

¶ 6 Burningham then moved for partial summary judgment, requesting, pursuant to Utah Code section 48–2c–1210, (1) that the court determine as a matter of law that OLP was dissolved and (2) the court wind up the company. Additionally, Defendants moved to limit all damage issues to an accounting under the LLC Act, which would thereby remove any need for a jury.

¶ 7 During a hearing on the various summary judgment motions, the parties discussed at great length how to resolve the legal and equitable claims alleged in the case. Ultimately the district court concluded that it could bifurcate the determination of the parties' legal and equitable claims by first holding a jury trial to determine the legal claims, that is, Wilson's fiduciary duty and contract-related claims. Then, if necessary, following the trial, the court would conduct an accounting and consider any remaining claims. To facilitate this bifurcation, the district court denied the Defendants' request for dissolution without prejudice and indicated that they could renew their request after the jury trial if required, and that if warranted the court would enter a decree of dissolution *nunc pro tunc.*

¶ 8 At trial, the Defendants renewed their motion for dissolution in the form of a motion

for directed verdict. They argued that Burningham and Wilson were deadlocked in management and voting power and that it was no longer practical to carry on the business. The district court granted the motion and found that the company had been effectively dissolved no later than August 31, 2001, which was the date the Defendants filed an answer to Wilson's complaint. Rather than proceeding with a dissolution, accounting, and winding up under the LLC Act, the district court determined that the jury should first decide Wilson's contract and fiduciary duty claims and any accompanying damages. At the close of a six-day trial, the court instructed the jury that if Burningham wrongfully dissolved OLP by repudiating his contract with Wilson and converting OLP's assets, they should award Wilson damages for lost profits up to the date of the November 2004 trial. Otherwise, if Burningham only breached his contract with Wilson, damages should be limited to August 31, 2001, the date the district court had found the company effectively dissolved.

¶ 9 The jury returned a verdict in favor of Wilson and awarded over $1.2 million in compensatory damages. In reaching that verdict, the jury found that Burningham and Intermountain Coatings had breached their contracts with Wilson and OLP and had also breached the fiduciary duties owed to Wilson and the company. The jury awarded damages based on a finding that Burningham repudiated the limited liability company agreement and converted the company's assets, breached the implied duty of good faith and fair dealing, and breached his fiduciary duties, but declined to award expectation or punitive damages. Burningham appealed.[1]

¶ 10 The court of appeals affirmed the district court. It held the district court correctly allowed Wilson's claim for repudiation to proceed to the jury without an application of the default member ownership provisions of the LLC Act or a complete judicial dissolution of the company under the LLC Act. *OLP, LLC*, 2008 UT App 173, ¶ 51, 185 P.3d

1138. The court first determined that a cause of action for repudiation "exists outside of the LLC Act." *Id.* ¶ 15. As part of this separate legal claim, the court of appeals concluded the jury considered member ownership a "hotly disputed" factual question and a key determination to awarding damages, and decided the issue in favor of Wilson. *Id.* ¶¶ 20–21. Therefore, the court of appeals held the district court did not need to calculate capital accounts to decide membership as a matter of law. Second, the court reasoned there was not a conflict between Wilson's repudiation claim and the district court's dissolution of OLP. *Id.* ¶ 27. The court concluded that repudiation was a distinct event that occurred well before the district court granted the dissolution. *See id.* ¶ 26. Further, the court of appeals noted that by finding August 31, 2004 to be the dissolution date, it was unclear whether the district court had formally dissolved OLP. *Id.* ¶ 23. The court of appeals also held that because repudiation was a separate legal claim from equitable dissolution, the district court did not err by first submitting the legal issue to the jury before considering any equitable remedies under the LLC Act. *Id.* ¶ 34. This was proper, the court determined, because under Utah precedent, "when legal and equitable issues turn on the same operative facts, a jury must decide the legal issue first." *Id.* (quoting *Zions First Nat'l Bank v. Rocky Mountain Irrigation, Inc.*, 795 P.2d 658, 662 (Utah 1990)). Finally, the court of appeals rejected Burningham's argument that to repudiate an LLC, a member must deny the existence of the business organization because such a limitation "would place the viability of an injured party's legal claim within the control of the alleged guilty party." *Id.* ¶ 39.

¶ 11 Burningham seeks a reversal of the court of appeals' opinion. We have jurisdiction pursuant to Utah Code section 78A–3–102(3)(a) (2008).

---

1. The district court vacated the verdict against Intermountain Coatings in favor of OLP but sustained the verdict against Burningham in favor of Wilson. Wilson cross-appealed the district court's reversal of the verdict against Intermoun-

tain Coatings, but the court of appeals considered it a conditional cross appeal and declined to address its merits. That decision is not before us on certiorari. Therefore, we consider only the claims between Burningham and Wilson.

## STANDARD OF REVIEW

¶ 12 Burningham presents three questions for this court's review: (1) whether the court of appeals erred in construing the scope of the LLC Act in relation to its affirmance of repudiation of a limited liability company agreement; (2) whether the court of appeals erred in its review of the district court's adjudication of claims and defenses presented below; and (3) whether the court of appeals and district court misapprehended the appropriate roles of judge and jury in adjudicating the claims and defenses presented below. Burningham's arguments for the second question overlap with the first and third question; therefore, we address those arguments as part of our consideration of the first and third issues.

■ ¶ 13 In accordance with rule 49(a)(4) of the Utah Rules of Appellate Procedure, our review is limited to the "questions set forth in the petition or fairly included therein"; we do not address any of the extraneous arguments presented by the parties in their briefs or at oral argument. Utah R.App. P. 49(a)(4). Additionally, "[o]n certiorari, we review the decision of the court of appeals and not that of the district court." *State v. Anderson*, 2009 UT 13, ¶ 6, 203 P.3d 990 (quoting *State v. Brake*, 2004 UT 95, ¶ 11, 103 P.3d 699). "Our review is for correctness, and we cede no deference to that court." *Peterson v. Kennard*, 2008 UT 90, ¶ 8, 201 P.3d 956.

## ANALYSIS

¶ 14 Central to each of the questions presented in this case is the role of the LLC Act in a dispute between LLC members that involves common law tort and contract claims. Burningham argues that the district court erred by not applying the LLC Act to the computation of damages Burningham owed Wilson. We disagree and hold the scope of the LLC Act is not so broad as to supersede common law tort and contract claims; members of a limited liability company may choose either to pursue common law claims, or to dissolve the company under the LLC Act and recover their interest in the company after an accounting and winding up.

Additionally, we hold the court of appeals correctly construed the role of the judge and the role of the jury in concluding that the jury properly determined member ownership in the context of the repudiation claim and that there remained no equitable issues for the district court to determine.

## I. THE LLC ACT DOES NOT DISPLACE THE COMMON LAW CLAIMS OR REMEDIES AVAILABLE TO A LIMITED LIABILITY COMPANY MEMBER FOR CLAIMS AGAINST OTHER COMPANY MEMBERS OR OTHER RELATED PARTIES

■ ¶ 15 Wilson asserted and presented to the jury claims for repudiation or breach of contract, breach of good faith and fair dealing, and breach of fiduciary duty, which are all common law claims. Burningham argues these claims should have been resolved under the LLC Act's dissolution provisions because the LLC Act's dissolution procedures provide the exclusive remedy to claims between members. We disagree. Instead, we uphold the court of appeals' determination that despite the comprehensive nature of the LLC Act, LLC members retain the ability to sue for damages based on common law claims such as repudiation or breach of contract and breach of fiduciary duty. These claims are separate and distinct from dissolution claims and may be pursued separately.

### A. The LLC Act Does Not Generally Preempt Common Law Claims

■ ¶ 16 "Traditionally, the legislature may change the common law only explicitly." *Gottling v. P.R. Inc.*, 2002 UT 95, ¶ 29, 61 P.3d 989 (Durham, C.J., dissenting). In limited cases, the scope of a statute may preempt the common law either by governing an area in so pervasive a manner that it displaces the common law or by directly conflicting with the common law. *Bishop v. GenTec, Inc.*, 2002 UT 36, ¶ 9, 48 P.3d 218. Upon a review of the plain language and structure of the LLC Act, we conclude the LLC Act does not preempt or displace the common law claims asserted by Wilson.

¶ 17 The form and plain language of the LLC Act indicate that common law claims are not preempted. The Act does not contain an explicit statement regarding the retention or displacement of common law claims; therefore we look to how the Act refers to and treats common law claims to determine the Act's impact on them. These references indicate the legislature considered common law claims generally retained and specifically limited them where necessary. For example, the default contract provisions of the LLC Act directly limit common law claims against members who are acting on behalf of the company. Utah Code Ann. § 48–2c–807(1) (2007). At the same time, however, the Act protects the ability of members to seek damages when other members are grossly negligent or their misconduct is willful. *Id.* Similarly, the statute clearly indicates in its treatment of limited liability company operating agreements that parties may not contract out of certain duties and obligations, such as good faith and fair dealing. *Id.* § 48–2c–120(1)(c). The Act's specific limitation and simultaneous retention of particular claims indicates the legislature considered all civil claims retained and chose to specifically limit the claims against members acting on behalf of the company. Thus, we conclude that the LLC Act does not preempt existing common law claims.

¶ 18 Burningham appears to argue that even if common law claims are retained, the remedies for such claims are limited to the provisions of the LLC Act. That is, a party may not seek legal damages before an equitable accounting or dissolution—a concept commonly referred to as the exclusivity rule. While this argument reflects historic partnership case law, we decline to adopt it in the context of limited liability companies. The LLC Act provides numerous remedies for disputing members such as dissolving the company or expelling members; all of which, we note, are equitable remedies. *See* Utah Code Ann. § 48–2c–710, –1201 to –1214 (2007 & Supp.2008). By providing explicit procedures for these equitable remedies, however, the LLC Act does not foreclose additional legal remedies. We conclude this notion is a relic of partnership law that need not be incorporated into limited liability law.

¶ 19 Historically, the notion of exclusive equitable remedies developed as a matter of common law. *See Sertich v. Moorman,* 162 Ariz. 407, 783 P.2d 1199, 1201–02 (1989) (outlining development of exclusivity rule in English and American common law). As a "judicially created rule of convenience" the exclusivity rule restricted disputes between partners to the equity courts to avoid "premature and piecemeal judgments," a party standing as "both plaintiff and defendant," and "the complicated accounting required to establish the rights of partnership parties." *Id.* at 1202. However, as the law and equity courts merged and rules of procedure developed, courts, including the Utah Court of Appeals, repeatedly found the rule inapplicable and created exceptions to the rule. *See generally* 59A Am.Jur.2d *Partnership* §§ 351–53 (2003); *see also Charlesworth v. Reyns,* 2005 UT App 214, ¶ 22, 113 P.3d 1031. A limited number of courts have abolished the exclusivity rule outright. *See Sertich,* 783 P.2d at 1205 (concluding that "continued enforcement of the accounting rule is indeed illogical, impractical, and inequitable"); *Dupuis v. Becnel Co.,* 535 So.2d 375, 378 n. 20 (La.1988). In addition, the Uniform Partnership Act abolished the exclusivity rule in partnerships and the Uniform Limited Liability Act excludes it from limited liability companies.[2] Uniform Partnership Act § 405, cmt. n. 2. (1997); Uniform Limited Liability Act § 410, cmt. (1996). Noting a strong trend away from the exclusivity rule, we see no reason to judicially incorporate it into Utah's limited liability company law. Therefore, we hold that the LLC Act does not abrogate common law claims nor does the exclusivity rule apply to limit disputes among members to equitable remedies.

### B. Common Law Claims and Judicial Dissolution Are Discrete Actions That Courts Must Adjudicate Separately

¶ 20 Burningham argues that even if common law claims are available, the court of

---

**2.** We acknowledge that Utah has not adopted the Uniform Limited Liability Act. We cite to the Uniform Act only as a reflection of the development of the common law.

appeals misapplied the common law and the LLC Act still provides the rule of decision in adjudicating the claims. Again, we disagree. A member of an LLC, similar to a partner, may sue another member for repudiating the LLC. This action is a separate claim for damages that does not require formal dissolution and wind up.

¶ 21 Common law repudiation is applicable in a limited liability contract dispute when one member refuses to perform the agreement and thereby abandons the purpose of the contract. Burningham argues that in affirming the district court, the court of appeals incorrectly condoned a hybrid action of common law repudiation and wrongful dissolution. On the contrary, the court of appeals correctly disavowed any such confusion by indicating that a reference to Wilson's repudiation claim as a "wrongful dissolution" claim was inaccurate. *OLP, LLC v. Burningham*, 2008 UT App 173, ¶ 9 n. 4, 185 P.3d 1138. Although the court of appeals discussed several cases involving or discussing wrongful dissolutions, it did so only because they were the most analogous. They were, however, partnership cases; the court of appeals relied on them because the LLC Act, especially at the time this case arose, was new and still did not have a well-developed body of law construing its import. And, while a wrongful dissolution claim does not directly translate into a dissolution of limited liability company analysis,[3] the reasoning does. The reason for allowing a claim of wrongful dissolution of a partnership on the one hand, and allowing a claim for repudiating a limited liability company agreement on the other, is the same. A claim for repudiation is "not an action between partners but an action between contracting parties, one of whom has breached the contract." *Gherman v. Colburn*, 72 Cal.App.3d 544, 140 Cal.Rptr. 330, 343 (1977). When one party effectively extinguishes a business agreement, whether it be a partnership agreement or a limited liability agreement, that party cannot rely on the agreement (or the default provisions of the LLC Act that supplement the agreement) to protect itself from the harm its actions have occasioned. *Smith v. Maine*, 145 Misc. 521, 260 N.Y.S. 425, 431 (Sup.Ct. 1932) ("A partner who has not fully and fairly performed the partnership agreement on his part has no standing in a court of equity to enforce any rights under the agreement.") (internal quotation marks omitted).

¶ 22 Burningham argues that the court of appeals' delineation of repudiation in a limited liability situation is at odds with the common law. Relying on *Gherman*, he argues that to repudiate a partnership or a limited liability company a party must deny the existence of the business entity. We see no need to limit repudiation to the terms of *Gherman*. Certainly, the disavowal of the existence of a business entity would result in a repudiation of the entity's operating agreement. However, a party may recognize the existence of a business entity and still abandon the entity's contract. For instance, "[a] refusal ... to act[ ] and perform functions as [a partner], as distinguished from mere neglect of duty, may be considered a repudiation of the [business entity]." *Smith*, 260 N.Y.S. at 431. As the court of appeals aptly explained, limiting repudiation to the disavowal of a business entity's existence would put the validity of an injured member's claims in the hands of the alleged wrongdoer who may acknowledge the entity, but refuse to perform the contract creating the entity. *OLP, LLC*, 2008 UT App 173, ¶ 39, 185 P.3d 1138. Therefore, the court of appeals was correct that common law repudiation and other breach of contract and breach of fiduciary duty claims are valid claims in a limited liability situation, and are distinct and separate from judicial dissolution or any dissolution under the LLC Act.

¶ 23 With distinct common law claims and LLC Act claims available, a member of a limited liability company may elect which remedy to pursue. A common law claim against a company member does not

---

**3.** Wrongful dissolution is based on a partner's ability to voluntarily dissolve the company, even against the partnership agreement. In such cases, however, the dissolution is considered wrongful. Utah's LLC Act does not provide this ease of exit. Instead the only avenue for dissolution is through the courts. Therefore as there is no voluntary dissolution, there is also no wrongful dissolution.

automatically trigger the LLC Act's equitable remedies, as Burningham argues. In some cases, both remedies may be required; in other cases one remedy adjudicated to completion may foreclose the other remedy, as occurred in this case. *See infra* Part II. For this reason it makes sense to adjudicate the claims separately.[4] The order of the adjudication of the claims depends on whether a jury trial is required and whether the claims share common facts—issues that invoke a consideration of the proper roles of judge and jury.

## II. THE COURT OF APPEALS PROPERLY CONSIDERED THE ROLE OF THE JUDGE AND JURY

¶ 24 Burningham argues that despite the court's decision to delay an adjudication of dissolution, the ownership of the members' interests had to be determined according to an accounting of the parties' capital accounts as provided for in the LLC Act before Wilson could be awarded damages.[5] The court of appeals agreed that damages were dependent on Wilson's percentage of ownership, but ·concluded the jury had determined the ownership percentages. *OLP, LLC v. Burningham*, 2008 UT App 173, ¶¶ 20–21, 185 P.3d 1138. We agree.

¶ 25 The jury found that Burningham and Wilson had entered a contract to form and operate OLP as equal members.[6] Burningham argues that this determination was insufficient because the parties made disproportionate contributions and therefore a revaluation of the capital accounts was necessary to determine each party's membership percentage. This argument ignores the consequences of a repudiation. By abandoning the limited liability contract, as the jury found, Burningham also abandoned his ability to seek resolution of the dispute according to the company's governing documents or the default provisions supplied by the LLC Act. At the point of repudiation, there were no longer any limited liability company terms to enforce, and Wilson's damages were determined as of the time of contract formation. For the same reason, Burningham's argument that dissolution procedures and a winding up were necessary also does not carry the day. With a finding of repudiation there was no limited liability company to dissolve or wind up.

¶ 26 Burningham argues that even if the jury did determine membership interests, the district court erred by submitting the issue to the jury in the first place. He suggests that the court should have performed an equitable accounting before submitting any legal claims to the jury. First, as discussed in Part I, we have declined to incorporate the rule that an accounting must be performed before a party may pursue legal claims. Second, Burningham seeks an accounting to determine Burningham and Wilson's membership interests. The court of appeals correctly held this was a factual issue belonging to the jury, and "when legal and equitable issues turn on the same operative facts, a jury must decide the legal issue first[, and] the jury's factual determination binds the trial court in its determination of the parallel equitable issue." *Zions First Nat'l Bank v. Rocky Mountain Irrigation, Inc.*,

---

4. In this case, the court of appeals correctly noted that although the district court determined a *date* of dissolution, it did not formally dissolve the company. To do so would have required additional steps and procedures, none of which were undertaken in this case. *See* Utah Code Ann. § 48–2c–1213 (2007). The date of dissolution was used only to define allowable damages based on whether there was a simple breach of contract or whether there was a repudiation.

5. The LLC Act provides, in the absence of a written operating agreement, that a member's proportion of interest or ownership of the company depends on the balance of his capital account. Capital accounts are maintained by the company for each member and are adjusted to reflect, among other things, the value of all contributions by that member. *Id.* § 48–2c–102(3) (2007 & Supp.2008)

6. Burningham argues that the jury was not properly instructed to determine the members' ownership. This argument is, however, outside of the question on certiorari. We review only the decision of the court of appeals and not that of the district court. Responding to Wilson's argument that this issue was not preserved to this court, Burningham cites only to arguments made to the district court and to statements made by the district court. As the court of appeals did not address the issue, it is outside the scope of our review.

795 P.2d 658, 662 (Utah 1990). Therefore, following the jury's determination that the members had fifty-fifty ownership of the company, there was no need for the court to perform a separate accounting. The jury's factual determination was binding. Similarly, the facts underlying Burningham's equitable defenses were determined by the jury or not applicable after the jury found there was a repudiation.

## CONCLUSION

¶ 27 In summary, we hold the LLC Act does not displace all legal claims between limited liability company members. Similarly we decline to incorporate the exclusivity rule into the limited liability body of law, which would require disputing members to first seek an accounting or other settlement of the business entity before pursuing legal claims. Finally, we hold that the jury properly considered the factual issues underlying Burningham's equitable claims and defenses and because these findings were binding on the trial court it was unnecessary for the court to try those claims and defenses separately. Therefore, we affirm.

¶ 28 Associate Chief Justice DURRANT, Justice WILKINS, Justice NEHRING, and Judge LYON concur in Chief Justice DURHAM'S opinion.

¶ 29 Having recused herself, Justice PARRISH does not participate herein; District Judge MICHAEL D. LYON sat.